## No. 24-1058

# UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

Secretary of Labor,
Mine Safety and Health Administration,

Petitioner

*v.*

Industrial TurnAround Corporation and
Federal Mine Safety and Health Review
Commission,

Respondents

On Petition for Review of an Order of the
Federal Mine Safety and Health Review
Commission

Brief for the Secretary of Labor

SEEMA NANDA
  Solicitor of Labor

APRIL E. NELSON
  Associate Solicitor

EMILY TOLER SCOTT
  Counsel for Appellate Litigation

EDWARD V. HARTMAN
  Senior Trial Attorney
  U.S. Department of Labor
  Office of the Solicitor
  Division of Mine Safety & Health
  201 12th Street South, Suite 401
  Arlington, VA 22202
  (312) 353-1143

## Certificate as to Parties, Rulings, and Related Cases

Under D.C. Circuit Rule 28(a)(1)(A), the Secretary of Labor[1]
certifies as follows:

### 1.    Parties

The following parties participated in the underlying proceeding
before the Federal Mine Safety and Health Review Commission, *ITAC*,
SE 2023-0197:

- Industrial TurnAround Corporation

- Federal Mine Safety and Health Review Commission

- Secretary of Labor, Mine Safety and Health Administration

Petitioner in this case is the Secretary of Labor. Respondents are
Industrial TurnAround Corporation and the Federal Mine Safety and
Health Review Commission. There are no *amici curiae.*

### 2.    Ruling Under Review

The ruling under review is the February 16, 2024, Order of the
Federal Mine Safety and Health Review Commission in *ITAC*, No. SE
2023-0197, reopening a penalty assessment that had become a final

---

[1] As of the date of filing, Julie Su is the Acting Secretary of Labor. This
brief uses "Secretary" to refer to the position of the Secretary in general,
not to Ms. Su in particular.

order of the Commission pursuant to section 105(a) of the Mine Act, 30

U.S.C. § 815(a). The decision is reported at *ITAC*, 46 FMSHRC 80

(2024).

**3.   Related Cases**

This case has not previously been before this Court. The Secretary

of Labor is not aware of any related cases currently pending in this

Court or any other.

# Table of Contents

Certificate as to Parties, Rulings, and Related Cases ..............................i

  1. Parties ................................................................................i

  2. Ruling Under Review .......................................................i

  3. Related Cases.................................................................ii

Table of Contents.................................................................... iii

Table of Authorities ................................................................ v

Glossary of Terms ................................................................... x

Jurisdictional Statement ......................................................... 1

Introduction and Statement of the Issues................................. 1

Statement of the Case ............................................................. 3

  1. Statutory framework ...................................................... 3

    a. MSHA's process for issuing citations and penalties...................... 4

      i. Citation issuance.................................................. 6

      ii. Calculating the proposed penalty............................. 6

      iii. Delivery of penalty assessment to operators ......................... 8

    b. Reopening penalties that have become final orders ..................... 9

  2. Factual Background ...................................................... 11

  3. ITAC's Motion to Reopen ............................................. 14

    a. Motion to Reopen.................................................... 14

    b. Secretary's Response in Opposition............................. 16

  4. Commission Decision.................................................... 18

Summary of Argument............................................................20

Standing................................................................................22

Argument ..............................................................................22

  1. The Court has jurisdiction to hear this case under the collateral order doctrine. ............................................22

  2. Standard of review ....................................................... 26

3. The Commission's reliance on an argument not made by ITAC, and devoid of substantial evidentiary support, is an abuse of discretion. ..........................................28

   a. The Commission majority's resolution of the case based on grounds it raised *sua sponte* is an abuse of discretion............28

   b. The Commission's decision is not supported by substantial evidence. ....................................33

4. The Commission abused its discretion by departing from precedent without explanation. ....................................34

   a. Service to an address of record is grounds for denying a motion to reopen. ..........................................36

   b. Operators must provide sufficiently detailed explanations for untimely contests. ....................................37

   c. Inadequate internal processing systems are not grounds for reopening. ..........................................41

   d. The seriousness of the underlying violation, and notice to an operator that it would receive a penalty, are important considerations. ..........................................42

5. The Court should reverse the Commission's decision and deny ITAC's motion without remand. ..........................................44

Conclusion..........................................45

Certificate of Compliance with Type-Volume Limit, Typeface Requirements, and Type-Style Requirements ..........................................47

Certificate of Service ..........................................48

# Table of Authorities

## Cases

*Am. Coal Co. v. FMSHRC,*
    933 F.3d 723 (D.C. Cir. 2019) .................................................................7

*CalPortland Company, Inc., v. Federal Mine Safety and Health Review
    Commission,*
    839 F.3d 1153 (D.C. Cir. 2016) ...............................................22, 24, 25

*Coal Emp. Project v. Dole,*
    889 F.2d 1127 (D.C. Cir. 1989) ...........................................................5

*Coopers & Lybrand v. Livesay,*
    437 U.S. 463 (1978) .......................................................................23, 24

*Donovan ex rel. Anderson v. Stafford Constr. Co.,*
    732 F.2d 954 (D.C. Cir. 1984) ............................................................44

*Greater Boston Television Corp. v. FCC,*
    444 F.2d 841 (D.C. Cir. 1970) ............................................................35

*Greenlaw v. United States,*
    554 U.S. 237 (2008) ..........................................................................28

*Jim Walter Res., Inc. v. FMSHRC,*
    920 F.2d 738 (11th Cir. 1990) ............................................................24

*KiSKA Construction Corp. v. WMATA,*
    167 F.3d 608 (D.C. Cir. 1999) ............................................................25

*Leeco, Inc. v. Hays,*
    965 F.2d 1081 (D.C. Cir. 1992) ..........................................................27

*Lone Mountain Processing, Inc. v. Sec'y of Lab.,*
    709 F.3d 1161 (D.C. Cir. 2013) ...............3, 10, 11, 12, 21, 26, 27, 34, 35

*Mach Mining, LLC v. Sec'y of Lab., MSHA,*
  728 F.3d 643 (7th Cir. 2013) ............................................... 27

*Meredith v. Federal Mine Safety and Health Review Commission,*
  177 F.3d 1042 (D.C. Cir. 1999) ........................... 22, 23, 24, 25

*Nat'l Cement Co. v. FMSHRC,*
  27 F.3d 526 (11th Cir. 1994) ............................................... 27

*Noranda Alumina, LLC v. Perez,*
  841 F.3d 661 (5th Cir. 2016) ............................................... 27

*RAG Cumberland Res. LP v. Fed. Mine Safety & Health Rev. Comm'n,*
  272 F.3d 590 (D.C. Cir. 2001) ............................................ 43

*Sec'y of Lab. v. Nat'l Cement Co. of Cal.,*
  573 F.3d 788 (D.C. Cir. 2009) ............................................ 22

*Sec'y of Lab. v. Westfall Aggregate & Materials, Inc.,*
  69 F.4th 902 (D.C. Cir. 2023) ............... 3, 7, 8, 20, 21, 27, 28, 30, 34, 44

*Trident Seafoods, Inc., v. NLRB,*
  101 F.3d 111 (D.C. Cir. 1996) ............................................ 28

## Statutes

30 U.S.C. § 801 ....................................................................... 3
30 U.S.C. § 801(c) .................................................................. 4
30 U.S.C. § 814(a) ............................................................... 6, 8
30 U.S.C. § 815(a) ............................... ii, 1, 6, 8, 10, 13, 33
30 U.S.C. § 816(a)(1) ............................................................ 27
30 U.S.C. § 816(b) ............................................................ 1, 22
30 U.S.C. § 819(d) ............................................................ 8, 29
30 U.S.C. §§ 811(a), 814(a), 815(a), 820(a) ........................... 4
30 U.S.C. §§ 823(d), 816(a)(1) ......................................... 4, 5

## Regulations

29 C.F.R. § 2700.1(b) ...................................................... 34, 35

30 C.F.R. 56.14100(c)..................................................12, 13
30 C.F.R. § 45.1..................................................9, 17, 18
30 C.F.R. § 45.3(a)(2).....................................................9
30 C.F.R. § 45.3(a)(3)....................................................17
30 C.F.R. § 45.5.........................................................9, 17
30 C.F.R. § 45.6...........................................9, 17, 33, 36
30 C.F.R. § 50.30.........................................................30
30 C.F.R. § 100.3(a)(1)....................................................6
30 C.F.R. § 100.5(a).......................................................7
30 C.F.R. § 100.5(b).......................................................8
30 C.F.R. § 100.7(a).......................................................6
30 C.F.R. § 100.7(c)...............................10, 13, 14, 15, 16

## Rules

D.C. Cir. R. 28(a)(7).....................................................22
D.C. Cir. R. 32.1(b)(3)..................................................32
D.C. Circuit Rule 28(a)(1)(A)..............................................i
Fed. R. App. P. 32(a)(5).................................................47
Fed. R. App. P. 32(a)(6).................................................47
Fed. R. App. P. 32(f)....................................................47
Fed. R. App. P. 32(a)(7)(B).............................................47
Fed. R. Civ. P. 60(b)(1).................................................10
Fed. R. Civ. P. 60(b)....................................................10

## Federal Mine Safety and Health Review Commission Decisions

*E. Associated Coal, LLC,*
    30 FMSHRC 392 (2008)...............................................10, 37

*Ember Contracting Corp.,*
    30 FMSHRC 1029 (2008).............................................11, 36

*Harvey Trucking,*
    21 FMSHRC 567 (1999).................................................36

*Higgins Stone Co.,*
    32 FMSHRC 33 (2010).................................................39

*Highland Mining Co.,*
  31 FMSHRC 1313 (2009) .................................................................. 38

*Jim Walter Res., Inc.,*
  15 FMSHRC 782 (1993) .............................................................. 1, 10

*Kentucky Fuel Corp.,*
  38 FMSHRC 632 (2016) .................................................................. 43

*Lone Mountain Processing, Inc.,*
  35 FMSHRC 3342 (2013) ................................................................ 38

*Mass Transp., Inc.,*
  30 FMSHRC 997 (2008) .................................................................. 36

*Noranda Alumina, LLC,*
  39 FMSHRC 441 (2017) .................................................................. 42

*Olmos Contracting 1, LLC,*
  39 FMSHRC 2015 (2017) ........................................................... 37, 43

*Pinnacle Mining Co.,*
  30 FMSHRC 1061 (2008) ................................................................ 41

*Potter South East, LLC,*
  45 FMSHRC 152 (2023) ................................................ 11, 18, 19, 20, 43

*Revelation Energy, LLC,*
  40 FMSHRC 375 (2018) .................................................................. 38

*Select Materials,*
  45 FMSHRC 1011 (2023) ................................................ 11, 39, 40, 41, 42

*Sun West Acquisition Corp.,*
  45 FMSHRC 141 (2023) .............................................................. 10, 37

*The Am. Coal Co.,*
  398 FMSHRC 1987 (2016) ................................................................. 7

## Other Authorities

S. Rep. No. 95-181 (1977) ............................................................. 4

# Glossary of Terms

FMSHRC        Federal Mine Safety and Health Review Commission

ITAC          Industrial TurnAround Corporation

JA            Joint Appendix

MSHA        Mine Safety and Health Administration

Ord.          Citations to the Underlying Federal Mine Safety and Health Review Commission Order

## Jurisdictional Statement

The Commission had jurisdiction over this case because ITAC moved to reopen a penalty assessment that became a final order of the Commission under section 105(c) of the Federal Mine Safety and Health Act of 1977 (the "Mine Act"). See 30 U.S.C. § 815(a). The Commission has held that, in appropriate circumstances, it maintains jurisdiction to reopen uncontested assessments that have become final Commission orders under 30 U.S.C. § 815(a); see *Jim Walter Res., Inc.*, 15 FMSHRC 782, 186-89 (1993). On February 16, 2024, the Commission issued its order granting ITAC's motion. JA 88. The Secretary filed her petition for review with this Court on March 11, 2024, within 30 days of the Commission's order, as required by the Mine Act. 30 U.S.C. § 816(b).

The Secretary recognizes the Commission's order remands the case back to the Chief Administrative Law Judge for further proceedings, but under the collateral order exception, this Court has jurisdiction to decide this matter. See, infra, pp. 23 - 28.

## Introduction and Statement of the Issues

On August 22, 2022, corroded and weakened columns supporting a bin full of phosphate rock at the Lee Creek Mine in Beaufort, NC,

collapsed, injuring several miners. MSHA issued ITAC a citation alleging a failure to remove hazardous machinery from service. The proposed penalty assessment for the violation was mailed to ITAC at its address of record. ITAC did not contest the proposed penalty assessment within 30 days; it therefore became a final order not subject to review.

ITAC filed a Motion to Reopen, asserting that although the proposed assessment was delivered to its address of record with MSHA, the address was no longer accurate, as ITAC had moved in 2009. It did not explain why it had failed to update its address, as required by the Mine Act and MSHA's regulations, for the intervening 14 years. The Secretary opposed the motion, arguing ITAC failed to substantiate its claim of excusable neglect, mistake, or inadvertence.

The Commission granted ITAC's Motion to Reopen. The Commission based its reasoning on its theory ITAC had not updated its address for 14 years because it had only received two citations since 2009—information and an argument neither offered nor made by ITAC. It cited no caselaw to support its decision, ignoring several applicable lines of precedent, and granted ITAC's request despite ITAC having offered no explanation for its failure to update its

address. Its decision is inconsistent with basic principles of administrative law and with this Court's decisions in *Lone Mountain Processing, Inc. v. Sec'y of Lab.*, 709 F.3d 1161 (D.C. Cir. 2013), and *Sec'y of Lab. v. Westfall Aggregate & Materials, Inc.*, 69 F.4th 902 (D.C. Cir. 2023). And it undermines the purpose of the Mine Act by allowing operators to flout the requirements of both the Mine Act and MSHA regulations.

1. Did the Commission abuse its discretion by granting ITAC's motion based on arguments and facts not advanced by ITAC?

2. Did the Commission abuse its discretion by departing from its precedent without explanation?

3. Should the Court deny ITAC's Motion to Reopen without remand?

## Statement of the Case

### 1. Statutory framework

The Mine Act was enacted to improve and promote safety and health in the Nation's mines. 30 U.S.C. § 801. In enacting the Mine Act, Congress stated, "there is an urgent need to provide more effective means and measures for improving the working conditions and practices in the Nation's . . . mines in order to prevent death and serious

physical harm, and in order to prevent occupational diseases originating in such mines." 30 U.S.C. § 801(c).

The Mine Act authorizes the Secretary, acting through MSHA, to promulgate mandatory safety and health standards, inspect mines, issue citations and orders for violations of the Act or mandatory standards, and propose penalties for those violations. 30 U.S.C. §§ 811(a), 814(a), 815(a), 820(a). The Mine Act also established the Commission, an independent Agency, to adjudicate many Mine Act disputes. Commission administrative law judges adjudicate citations, orders, and penalties that mine operators contest, subject to discretionary review by the Commission and judicial review by a United States Court of Appeals. 30 U.S.C. §§ 823(d), 816(a)(1).

### a. MSHA's process for issuing citations and penalties

The Mine Act's legislative history underscores the importance of civil penalties. Congress "firmly believes that the civil penalty is one of the most effective mechanisms for insuring lasting and meaningful compliance with the law." S. Rep. No. 95-181, at 15 (1977). Congress remarked that low penalty assessments were "one disturbing element of the current civil penalty system," but it was "equally disturbed by the

rather long period of time between citation of the initial violation and the final payment of the penalty associated with that violation." *Id.* The report emphasized "to effectively induce compliance, the penalty must be paid by the operator in reasonably close time proximity to the occurrence of the underlying violation." *Id.* at 16. Congress focused on eliminating the predecessor statute's "lengthy, often repetitive procedure" that "encourage[d] delaying the ultimate payment of civil penalties," because "delay in assessment and collection of civil penalties does not encourage operator compliance with the Act and its standards." *Id.* at 44. "To be effective and to induce compliance, civil penalties, once proposed, must be assessed and collected with reasonable promptness and efficiency." *Id.* at 43. This Court has previously considered this legislative history, remarking, "[f]rom this history, we conclude that Congress was intent on assuring that the civil penalties provide an effective deterrent against all offenders . . . ." *Coal Emp. Project v. Dole*, 889 F.2d 1127, 1133 (D.C. Cir. 1989), *enforcement granted*, 900 F.2d 367 (D.C. Cir. 1990).

### i. Citation issuance

The Mine Act provides that, upon discovering a violation, an inspector "shall, with reasonable promptness, issue a citation to the operator," and that "[e]ach citation shall be in writing and shall describe with particularity the nature of the violation . . . ." 30 U.S.C. § 814(a). Most citations are issued in the field by the MSHA inspector immediately after concluding the inspection. This is done in part because the citation or order must "fix a reasonable time for the abatement of the violation," so it is critical to issue the citation as soon as feasible. 30 U.S.C. § 814(a).

### ii. Calculating the proposed penalty

Those citations and orders are then transmitted from the enforcement field offices nationwide to MSHA headquarters, which calculates the proposed penalty and mails the proposed penalty assessment to the operator at its address of record. 30 U.S.C. § 815(a); 30 C.F.R. § 100.7(a).

The default process for calculating penalties is through the regular assessment process: applying a formula to the six statutory penalty criteria. 30 C.F.R. § 100.3(a)(1). "For regular proposed penalty

assessments, 'MSHA's Office of Assessments provide operators and, in turn, Judges with an "Exhibit A" consisting of a penalty report detailing the penalty points assessed under each statutory factor'; the 'exhibit provides the operator an explicit explanation of the bases for the proposed penalty.'" *Westfall*, 69 F.4th at 907 (quoting *The Am. Coal Co.*, 398 FMSHRC 1987, 1991 (2016), *aff'd sub nom. Am. Coal Co. v. FMSHRC*, 933 F.3d 723 (D.C. Cir. 2019)) (cleaned up). Those regular assessments can be calculated and mailed out to the operator in a matter of weeks.

Depending on the severity of the violative conditions, "MSHA may elect to waive the regular assessment under § 100.3 if it determines that conditions warrant a special assessment." 30 C.F.R. § 100.5(a). MSHA may use this special assessment process to propose a higher penalty than what would result from a regular assessment. See *Westfall*, 69 F.4th at 908; MSHA, Special Assessment General Procedure (2022), https://www.msha.gov/sites/default/files/ Compliance_Enforcement/Special%20Assessment_GENERAL%20PROC EDURES.pdf.

In the special assessment process, MSHA considers the same statutory criteria as in regular assessments, but it does not rely on a formula; instead, MSHA drafts its finding "in narrative form." 30 C.F.R. § 100.5(b). Special Assessments therefore "take longer to formulate and finalize[, . . .] so there is often a gap between the issuance of the citation and the operator's receipt of the special assessment." *Westfall*, 69 F.4th at 908 (quotation omitted) (cleaned up).

### iii. Delivery of penalty assessment to operators

After the issuance of a citation or order, "[MSHA] shall, within a reasonable time after the termination of such inspection or investigation, notify the operator by certified mail of the civil penalty to be assessed . . . ." 30 U.S.C. § 815(a).So each operator is required to file with MSHA its name and address, and to "promptly" file any revisions thereof. 30 U.S.C. § 819(d). The failure of an operator to keep its address of record up-to-date is a violation of the Mine Act. See 30 U.S.C. § 814(a) (authorizing MSHA to issue a citation if an operator "has violated this Act").

The requirement to keep an address up-to-date is especially important for contractors, which often work at many different mines

and may not have a constant presence at any one site. MSHA has promulgated "procedures for service of documents upon independent contractors" in order "to facilitate implementation of MSHA's enforcement policy of holding independent contractors responsible for violations committed by them and their employees." 30 C.F.R. § 45.1. These regulations require contractors to provide "an address of record for service of documents . . . ." 30 C.F.R. § 45.3(a)(2). Proposed penalty assessments delivered to addresses of record constitute service. 30 C.F.R. § 45.5. Service of documents to the contractor "may be proved by a Post Office return receipt showing that the documents were delivered to the address of record or that the documents could not be delivered to the address of record because the independent contractor is no longer at that address and has established no forwarding address; because delivery was not accepted at that address; or because no such address exists." 30 C.F.R. § 45.6. Contractors "may request service by delivery to another appropriate address of record" they provide to MSHA. *Id.*

### b. Reopening penalties that have become final orders

A proposed penalty becomes a final order of the Commission 30 days after a mine operator receives the proposed penalty and does not

contest it. 30 U.S.C. § 815(a); 30 C.F.R. § 100.7(c). The Commission has held, in appropriate circumstances, it may reopen a final order, and it looks to Federal Rule of Civil Procedure 60(b) for guidance. See *Jim Walter Res., Inc.*, 15 FMSHRC at 787-89. Using Rule 60(b), the Commission may reopen a final order when the failure to contest the penalty was due to "mistake, inadvertence, or excusable neglect." See Fed. R. Civ. P. 60(b)(1). As this Court has observed, "by its own choice, the Commission must be 'guided so far as practicable' by a rule that states that it 'may' reopen final orders. This leaves the Commission with much discretion, but that discretion is not unfettered." *Lone Mountain*, 709 F.3d at 1163.

"Over the years . . . the Commission has developed a body of precedent regarding how to treat such motions based on the facts in each case." *Lone Mountain*, 709 F.3d at 1163. It has held that operators must provide specific and detailed explanations for failures to file timely contests. See, *e.g.*, *Sun West Acquisition Corp.*, 45 FMSHRC 141, 142 (2023) (quoting *E. Associated Coal, LLC*, 30 FMSHRC 392, 394 & n.2 (2008)). It has held that if an operator fails to contest a penalty because of an inadequate internal processing system, it has not

established good cause. See, *e.g.*, *Select Materials*, 45 FMSHRC 1011, 1013 & n.4 (2023) (collecting cases). It has recognized that every operator must keep its address of record updated. See, *e.g.*, *Ember Contracting Corp.*, 30 FMSHRC 1029, 1030 (2008). It also considers the seriousness of the violation, and the operator's notice that it was going to receive a penalty, in determining whether an operator has good cause. See, *e.g.*, *Panther Creek Mining, LLC*, 46 FMSHRC 9, 11 (2024); *Potter South East, LLC*, 45 FMSHRC 152, 154 n.3 (2023). The Commission is bound by that precedent when it adjudicates motions to reopen. See *Lone Mountain*, 709 F.3d at 1163-64.

## 2. Factual Background

On September 27, 2022, MSHA conducted an inspection of the Lee Creek Mine, following an August 22, 2022, accident involving the collapse of a bin full of phosphate rock resulting in three miners suffering severe injuries. The bin collapsed because its support columns failed. JA 28. Prior to the collapse, ITAC had found a hole in the bottom of one column, and severe corrosion to other columns. *Ibid*. The corrosion was so severe that, while using a chipping hammer to test the structural integrity of one of the columns, ITAC's engineer

inadvertently broke a hole through the column. *Ibid*. Despite finding an existing hole and creating another because of the severe corrosion, ITAC conducted no further tests to determine if the support columns were structurally safe. It did not cordon off, barricade, or otherwise remove the bin from service. It took no steps to prevent miners from working on the failing equipment or working in the immediate vicinity. Miners, unaware of the dangers found by ITAC, continued to work on and around the compromised structure until its eventual collapse. Three miners were seriously injured in the collapse.

ITAC was the contractor tasked with checking the structural integrity of the support columns. MSHA Inspector B. L. Deaton issued ITAC Citation No. 9633647 alleging a violation of 30 C.F.R. 56.14100(c) ("When defects make continued operation hazardous to persons, the defective items including self-propelled mobile equipment shall be taken out of service and placed in a designated area posted for that purpose, or a tag or other effective method of marking the defective items shall be used to prohibit further use until the defects are corrected."). JA 28. This citation was served to Mr. Chris Lupton, an engineer with ITAC. To abate the violation and terminate the citation,

ITAC twice asked MSHA for additional time to develop a standard operating procedure (SOP) for its engineers to follow when inspecting structures for defects. It eventually developed the SOP (and MSHA terminated the citation) on October 19, 2022. JA 29 – 31.

MSHA specially assessed Citation No. 9633647 and proposed a $33,983.00 penalty. JA 8. MSHA determined the special assessment was warranted because three miners were seriously injured, and ITAC's failure to remove the unstable surge bins from service and failure to barricade the hazardous areas to prohibit miners from entering the area were indicative of ITAC's high degree of negligence. JA 10. The miners' injuries resulting from ITAC's high degree of negligence indicated a need for greater deterrence than what a regular assessment would provide. *Ibid.*

MSHA delivered the penalty package, via certified mail, to ITAC at its address of record – 13203 N. Enon Road, #101, Chester, VA 23836 – on April 3, 2023. JA 37. The package was "delivered to an individual at the address . . . [and] was signed for by I ITAC." *Ibid.*

ITAC did not contest the penalty; it became a final order on May 3, 2023. See 30 U.S.C. § 815(a); 30 C.F.R. § 100.7(c). JA 32, 40.

### 3.  ITAC's Motion to Reopen
#### a.  Motion to Reopen

On June 5, 2023, ITAC moved to reopen the April penalty. JA 1 –

15. ITAC claimed its "failure to timely contest resulted from excusable

neglect, mistake or inadvertence," but did "not reflect indifference,

inattention, inadequate or unreliable office procedures or general

carelessness." JA 2.

To support its position, ITAC admitted that the MSHA penalty

assessment was delivered to 13203 N. Enon Road, #101, Chester, VA

23836, but asserted that it was an incorrect address, an address then

occupied by another entity. JA 1. ITAC stated it had not occupied this

address since 2009. *Ibid.* Yet on May 25, 2023, Mr. Corey Dumas, its

Senior Procurement Agent, went to that building to look for packages

ITAC personnel thought were missing. *Ibid.* Mr. Dumas was granted

access to the building by an unnamed person and escorted to a locked

office near the front desk containing unclaimed mail and packages. *Ibid.*

Mr. Dumas was given "a number of misplaced mail and packages,"

including a package containing MSHA's proposed penalty packet. JA 1

– 2. Mr. Dumas delivered MSHA's mailing to the ITAC Corporate Office

Attendant, who then ensured the package was delivered to appropriate personnel on May 26, 2023. JA 2.

On May 30, 2023, ITAC's counsel called the MSHA Civil Penalty Compliance Office to notify it of its discovery of the penalty packet but was told by the Compliance Office that because no notice of contest had been received within 30 days of delivery of the packet, it had become a final Commission order. JA 2. The MSHA Compliance Office also informed ITAC's counsel that the address on the package was the address MSHA currently had on file for ITAC. *Ibid*. According to ITAC, it began taking steps to update its records with MSHA to prevent similar issues from occurring. *Ibid*.

ITAC argued that, because MSHA had delivered the penalty packet to an address ITAC described as "incorrect" and one at which ITAC had not resided since 2009, its failure to timely contest was due to excusable neglect, mistake, or inadvertence. ITAC argued the failure did not reflect indifference, inattention, inadequate or unreliable office procedures or general carelessness. Rather, ITAC argued, it resulted from mistakes ITAC typically does not make. JA 2. ITAC gave no

explanation for its failure to update its address with MSHA in the 14 years since its move in 2009.

### b. Secretary's Response in Opposition

The Secretary filed her opposition arguing ITAC failed to meet the Commission's requirements for obtaining a reopening. JA 45-87. The Secretary cited Commission precedent stating that operators must provide all known details, including relevant dates and persons involved, and a clear explanation that accounts for the failure to submit a timely response and for any delays in seeking relief once the operator became aware of the delinquency or failure. JA 49.

The Secretary argued ITAC's Motion to Reopen was based on the fact it received MSHA's penalty packet only after its procurement agent went to its address of record to look for missing packages. *Ibid.* After checking at an address it had not occupied for more than 14 years, ITAC had its personnel attempt to process the assessment. JA 50, 49. The Secretary argued that ITAC's "failure to fulfill its legal responsibilities does not constitute excusable neglect warranting reopening." JA 51-52.

The Secretary explained ITAC became a registered contractor (Contractor Identification Number D737) after it submitted to MSHA (among other things) "[a]n addresses or record for service of documents" pursuant to 30 C.F.R. § 45.3(a)(3). JA 50. The Secretary also noted the importance of the address of record and operators' responsibility to keep it up-to-date. The address of record is crucial for because the service of citations, orders, and other documents is complete upon delivery to the address of record. *Ibid.* (citing 30 C.F.R. § 45.5). The Secretary noted contractors "may request service by delivery to another appropriate address of record. . . . " *Ibid.* (quoting 30 C.F.R. § 45.6). Finally, the Secretary noted that MSHA requires contactors to keep their addresses of record current "to facilitate implementation of MSHA's enforcement policy of holding independent contractors responsible for violations committed by them and their employees." *Ibid.* (quoting 30 C.F.R. § 45.1).

The Secretary provided the Commission with ITAC's history of working at the Lee Creek Mine, which was owned by PCS Phosphate Company, Inc. JA 50. ITAC's address of record, as early as 2002 and through the issuance of the citation at issue here, was 13203 N. Enon

Church Road, #101, Chester, VA. JA 51. ITAC did not dispute the MSHA penalty packet was delivered to its address of record, and ITAC had never registered another address with MSHA; nor had it ever requested MSHA deliver documents to an alternative address. JA 51. ITAC never provided MSHA with a different address until finally updating it in June 2023. *Ibid.*

The Secretary argued that the severity of the accident and the length of time it took to abate the violation should have given ITAC notice that an assessment was forthcoming. JA 52. The Secretary noted that ITAC was issued the citation itself on September 27, 2022. JA 55.

Finally, the Secretary reminded the Commission the seriousness of the underlying events of a citation is a relevant factor in determining whether to grant or deny a motion to reopen a final order. JA 52 (citing *Potter South East*, 45 FMSHRC at 154 n.3).

### 4. Commission Decision

The Commission's majority found ITAC demonstrated good cause for its failure to timely respond and acted in good faith by timely filing its request to reopen. JA 90. The majority noted that ITAC did not dispute that the assessment packet was mailed to the correct address of

record. JA 89. The majority also noted ITAC went to its former address to check for missing mail. *Ibid*. The majority emphasized how, despite the assessment being delivered to ITAC's correct address of record, ITAC was unable to determine who signed for the package because the USPS confirmation only stated it had been delivered to the address and "signed by ITAC." *Ibid*.

Although ITAC never argued as much, the majority thought ITAC "may not have been aware that its former address was listed as its address of record with MSHA since [it] has received only two citations since 2009, including the citation at issue." JA 89. Therefore, it reasoned, ITAC's mistake in failing to update its address was an excusable one. *Ibid*. In its summation paragraph, the majority noted, however, "that a repeated failure to update one's address of record would indicate an inadequate internal process and may result in future motions to reopen being denied." JA 90. The Commission cited no case law supporting its decision that ITAC established good cause and did not engage with or distinguish any of its precedent.

One Commissioner dissented, finding that ITAC failed to establish good cause for its failure to update its official address and therefore, for

its failure to timely contest the penalty. "The operator's failure to update its address or record does not constitute excusable neglect." JA 91. The dissent noted ITAC provided no justification for why it took 14 years to update its official address, but that the majority supplied its own justification. *Ibid*.

## Summary of Argument

Reopening a penalty that has become a final order of the Commission is an extraordinary step subject to many limitations. The burden rests with the operator to provide sufficiently detailed justification as to why it should be reopened. The Commission must then consider the facts and arguments presented and then apply precedent.

The Commission first erred by justifying ITAC's failure to properly update its address of record with MSHA by *sua sponte* fashioning, and relying on, its own theory that ITAC was not aware its address of record was out of date because it had only been issued two citations since 2009. But ITAC never made that claim, so the Commission could not base its decision on it. See *Westfall*, 69 F.4th at 911–14. The Commission's error deprived the Secretary of an

opportunity to present evidence rebutting the non-existent claim by ITAC. Had the Secretary known those were issues, the Secretary would have easily countered them. See *id.* at 912.

Second, the Commission abused its discretion by departing from its precedent without explanation and without caselaw support. See *Lone Mountain*, 709 F.3d at 1162–64. In this case the Commission, without explanation, ignored statutory and regulatory provisions requiring operators to maintain up-to-date addresses. It ignored its own precedent for reopening cases, including precedent holding that operators must provide detailed explanations, that inadequate internal processes are not justification for reopening a final order, and that serious enforcement actions require operators to take careful action to file timely contests.

Generally, the Court remands cases back to the Commission to apply the correct law to the facts. But, if only one conclusion would be supportable, remanding serves no purpose. Because ITAC provided no evidence or explanation for the central issue—why it failed to update its address of record—the only conclusion is that it lacked good cause for its untimely contest, and remanding the case is unnecessary. The Court

should reverse the Commission and deny ITACs motion without remand.

## Standing

The Secretary has standing to seek review under section 106(b) of the Mine Act, 30 U.S.C. § 816(b). See D.C. Cir. R. 28(a)(7). It authorizes the Secretary to seek review of any final Commission order in this Court. 30 U.S.C. § 816(b); see *Sec'y of Lab. v. Nat'l Cement Co. of Cal.*, 573 F.3d 788, 792 (D.C. Cir. 2009).

## Argument

### 1. The Court has jurisdiction to hear this case under the collateral order doctrine.

This Court has jurisdiction to review the order of the Commission under 30 U.S.C. § 816(b) and the collateral order doctrine. See *Meredith v. Federal Mine Safety and Health Review Commission*, 177 F.3d 1042 (D.C. Cir. 1999); *CalPortland Company, Inc., v. Federal Mine Safety and Health Review Commission*, 839 F.3d 1153, 1160 (D.C. Cir. 2016).

Normally, appellate review of administrative action is restricted to final agency orders. *Meredith*, 177 F.3d at 1047. Here, the Commission's order remanding the matter back to the Chief Administrative Law Judge for further proceedings pursuant to the Mine Act (JA 90) falls

outside the scope of a final action. See *Meredith*, 177 F.3d at 1047

("Here, the Commission's order reinstating the miners' complaints and

remanding the matter to the ALJ for further record development clearly

falls outside the heartland of final action."). But the order also "fall[s]

within the bounds of the so-called collateral order doctrine." *Id.* at 1048.

Under the doctrine, "even though a disposition does not end the

litigation, it qualifies for immediate review if it: (i) conclusively

determines a disputed question; (ii) resolves an important issue

completely separate from the merits of the action; and (iii) is effectively

unreviewable on appeal from a final judgment." *Id.* (citing *Coopers &*

*Lybrand v. Livesay*, 437 U.S. 463, 468 (1978)). The Commission's order

comfortably meets all three requirements.

    First, the Commission's decision conclusively determines the issue

of whether ITAC has established good cause for reopening. This case is

analogous to *Meredith*: after finding officials susceptible to suit under

the statute, the Commission remanded the matter to an administrative

law judge to determine whether the statute was violated. This Court

held the Commission's decision "conclusively determined the

petitioners' claimed right not to face administrative or judicial

proceedings" under the statute. *Id.* The Court reasoned that exposure—being "forced to defend [oneself] in ... agency proceedings"—is the hallmark of a "fully consummated decision." *Id.* Here, the Secretary would be compelled to participate in Commission proceedings otherwise precluded by the final order. And "there are literally 'no further steps' that [the Secretary] can take in order to avoid the Commission's order at the agency level." *CalPortland*, 839 F.3d at 1161 (quoting *Jim Walter Res., Inc. v. FMSHRC*, 920 F.2d 738, 744 (11th Cir. 1990)).

Second, the Commission's order is "completely separate from the merits of the action." *Meredith*, 177 F.3d at 1048 (quotation omitted). In *Meredith*, this Court held that a Commission ruling that certain government officials were susceptible to suit under the Federal Mine Safety and Health Act was an appealable collateral order because the officials' susceptibility to suit had "little, if anything, to do with the substance of the underlying allegations" that the officials violated that Act. *Id.* at 1051. So too here: the Commission's order holds only that ITAC's failure to timely contest the MSHA Assessment was the result of excusable neglect. That question has nothing to do with the merits issue of whether ITAC violated the mandatory safety standard for which it

was cited. Thus, as in *Meredith*, this Court confronts a question wholly independent of the underlying violation. *Id.* at 1050.

For the same reason, the Commission's decision is "effectively unreviewable on appeal from a final judgment." *Meredith*, 177 F.3d at 1048. As this Court noted in *Meredith*, "[o]nce administrative proceedings have run their course, the interest in avoiding them has been vitiated and cannot be vindicated." *Id.* at 1052 (citing *KiSKA Construction Corp. v. WMATA,* 167 F.3d 608 (D.C. Cir. 1999), in which this Court allowed an appeal, in part, under the collateral order doctrine of whether an agency was susceptible to suit under the D.C. Freedom of Information Act). The same analysis applies here: before the Commission's decision, the citation and penalty were a final order, and the Secretary was not subject to administrative proceedings about them. Short of review by this Court now, the Secretary's "interest in avoiding proceedings could not otherwise be vindicated." *Meredith*, 177 F.3d at 1052 (characterizing rationale of *KiSKA*).

And motions to reopen "involve *important interests* that will be effectively unreviewable on appeal . . . ." *CalPortland*, 839 F.3d at 1161 (emphasis added); *see also Meredith*, 177 F.3d at 1049 (the collateral

order analysis considers whether an order "resolves an *important issue* completely separate from the merits") (emphasis added) (citation omitted). The Mine Act's purpose is to protect the nation's miners. Being able to rely on the imposition of timely and meaningful penalties furthers the Act's ability to fulfill its intended goal. See *supra* pp. 6 - 8. If the Commission is allowed to abuse its discretion and reopen final orders at its whim, without regard to facts and reason, the Mine Act's enforcement mechanism will be severely weakened, and operators will be rewarded for their carelessness, inadequate internal procedures, and generally inexcusable neglect. When that happens, and when Secretary is then forced to give operators another "bite at the apple" at trial, the damage will have been done without recourse.

The Commission's order thus satisfies the requirements of the collateral order doctrine.

## 2. Standard of review

This Court reviews the Commission's decisions on motions to reopen for an abuse of discretion. See *Lone Mountain*, 709 F.3d at 1163. "Over the years . . . the Commission has developed a body of precedent regarding how to treat such motions based on the facts in each case." *Id.*

Departure from that precedent without adequate explanation is an abuse of discretion. *Id.* at 1163-64.

"Although the APA does not apply in judicial review of Commission orders," the Court is "nonetheless guided by general administrative law principles in reviewing the Commission's orders for abuse of discretion." *Westfall*, 69 F.4th at 911 (citing *Noranda Alumina, LLC v. Perez*, 841 F.3d 661, 664 (5th Cir. 2016)). "[T]his court has made it clear that the Commission is bound by the principles of reasoned decision-making when adjudicating cases before it." *Id.* (citing *Leeco, Inc. v. Hays*, 965 F.2d 1081, 1085 (D.C. Cir. 1992)). Deciding a case on grounds not raised by the parties, or based on claims the parties did not raise, does not satisfy those principles. See *id.* at 911-12.

The Court reviews the factual findings of the Commission to ascertain whether they are supported by substantial evidence. 30 U.S.C. § 816(a)(1); *Westfall*, 69 F.4th at 911 (citing *Mach Mining, LLC v. Sec'y of Lab., MSHA,* 728 F.3d 643, 649 (7th Cir. 2013)). "Substantial evidence is determined by evaluating whether there is such relevant evidence as a reasonable mind might accept as adequate to support the [Commission's] conclusion." *Id.* (quoting *Nat'l Cement Co. v. FMSHRC,*

27 F.3d 526, 530 (11th Cir. 1994)).  This Court will reverse the

Commission if there is no evidence in the record to support its decision.

See *Westfall*, 69 F.4th at 912-14.

**3.  The Commission's reliance on an argument not made by ITAC, and devoid of substantial evidentiary support, is an abuse of discretion.**

**a.  The Commission majority's resolution of the case based on grounds it raised *sua sponte* is an abuse of discretion.**

The Commission, as an adjudicatory body, must adhere to the

general rule of party presentation: "[o]ur adversary system . . . re[lies]

on the parties to frame the issues for decision and assign[s] to courts

the role of neutral arbiter of matters the parties present." *Greenlaw v.*

*United States*, 554 U.S. 237, 243–44 (2008). Courts should normally

operate "around the premise that the parties know what is best for

them, and are responsible for advancing the facts and arguments

entitling them to relief." *Id.* Furthermore, "[i]t is a basic tenet of

administrative law that each party to a formal adjudication must have

a full and fair opportunity to litigate the issues to be decided by the

agency. *Westfall*, 69 F.4th at 911-12 (citing *Trident Seafoods, Inc., v.*

*NLRB*, 101 F.3d 111, 116 (D.C. Cir. 1996)).

The Commission majority based its decision on a finding ITAC "may not have been aware that its former address was listed as its address of record with MSHA since ITAC has received only two citations since 2009, including the citation at issue." JA 89. But ITAC never made that claim. ITAC never said it was unaware its address of record with MSHA hadn't been updated, or that it was unaware it needed to keep its address updated. See JA 1–15. ITAC simply recited the story of how it eventually found the penalty packet—by going to its former address, one it hadn't occupied for 14 years, to look for other packages that were missing.

In its Motion to Reopen, ITAC alleged the proposed assessment was delivered to "the incorrect address on or around April 3, 2023." JA 1. But it is not disputed the address was "incorrect" only because of ITAC. MSHA delivered the proposed assessment to ITAC's address of record, as it was required to do—the address ITAC was solely responsible for ensuring was kept up-to-date with MSHA. See 30 U.S.C. § 819(d). MSHA delivered the proposed penalty to the correct address, and no evidence was introduced to explain ITAC's failure to notify MSHA of its change of address for 14 years.

If ITAC had argued it was simply unaware its address hadn't been kept up-to-date, and had included evidence to support its argument, the Secretary would have had a "full and fair opportunity to litigate the issues to be decided." See *Westfall*, 69 F.4th at 911. The Secretary would have easily countered ITAC's argument and evidence. But ITAC did not provide any meaningful evidence in its motion, and the Secretary had no chance of fully and fairly litigating the new issues the Commission considered.

Had the Secretary been given the chance, the Secretary would have presented contrary evidence. See *Westfall*, 69 F.4th at 912. First, every operator is required to file quarterly employment and production statements with MSHA. 30 C.F.R. § 50.30. As part of those filings, operators are asked whether the information—including their registered address – is accurate. Whether the operator files its quarterly statement via facsimile or mail, there is a space to write in any updates or corrections, and operators are prompted, "If any information below is incorrect, please enter correct information here." MSHA, Quarterly Mine Employment and Coal Production Report

(MSHA Form 7000-2), https://www.msha.gov/sites/default/files/ Support_Resources/Forms/MSHA%207000-2.pdf:

## For Quarter Year

| | |
|---|---|
| Check here if this report is being submitted by a contractor | ☐ |

If any information below is incorrect, please enter correct information here:

County:

Operation Name:

Operating Company Name and Mailing Address:

County

If the operator decides to submit them via MSHA's online filing system, there is a reminder in bold red print to "notify your MSHA District Office with address or status changes."[2]



If ITAC had argued it was unaware of its 14-year out-of-date address because it had only received two citations between 2009 and 2023, the Secretary could have responded with evidence that ITAC had been making quarterly reports to MSHA since at least 2013 until the

---

[2] The online quarterly reporting system is publicly accessible, but operators must first register before being allowed to report electronically. The Secretary is including a screenshot for the Court's convenience. Cf. D.C. Cir. R. 32.1(b)(3).

present. The Secretary would have been able to provide the Commission with evidence of at least 39 individual filings since 2009 by ITAC to MSHA, which would show a failure to update its address of record despite notifications and prompts to do so. This would have satisfied even the Commission's statement that "[r]epeated failure to updates one's address of record would indicate an inadequate internal process . . . ." See JA 90.

**b. The Commission's decision is not supported by substantial evidence.**

The Commission's order finding good cause rests on two crucial factual findings: (1) that the assessment was delivered to ITAC's address of record, but the particular person who signed for it was "unclear"; (2) that "it appears that ITAC may not have been aware that its former address was listed as its address of record with MSHA since ITAC has received only two citations since 2009 . . . ." JA 89.

The first finding does not support the Commission's order because it is irrelevant. All the Mine Act and MSHA's regulations require for service to be effective is that MSHA send the assessment by certified mail to the address of record. See 30 U.S.C. § 815(a); 30 C.F.R. § 45.6 ("Service of documents upon independent contractors may be proved by

a Post Office return receipt showing that the documents were delivered to the address of record"). Everyone agrees that happened here. But even if the particular person signing for the envelope mattered, the Commission's decision still would not be supported by substantial evidence, because *no* evidence supports the second finding. That is so for a simple reason: ITAC never claimed it did not know that its former address was its address of record. See *Westfall*, 69 F.4th at 912, 915 (concluding that "there is no substantial evidence or legitimate legal basis to justify" a Commission order on reopening when "there is also nothing in evidence submitted by the parties to support the Commission's decision").

## 4. The Commission abused its discretion by departing from precedent without explanation.

In *Lone Mountain*, this Court reversed a Commission decision denying the operator's motion to reopen because the Commission failed to discuss how its precedent applied to evidence and/or argument made by an operator. 709 F.3d 1161. As the Court noted, the Commission "by its own choice . . . must be 'guided so far as practicable' by a rule that states that it 'may' reopen final orders." *Id.* at 1163 (quoting 29 C.F.R.

§ 2700.1(b)). "This leaves the Commission with much discretion, but that discretion is not unfettered." *Id.*

Although the Commission does not have to "address every conceivably relevant line of precedent in [its] archives," it "must address precedent directly on point." *Id.* at 1164. This Court has long held "an agency changing its course must supply a reasoned analysis indicating that prior policies and standards are being deliberately changes, not casually ignored." *Id.* (quoting *Greater Boston Television Corp. v. FCC*, 444 F.2d 841, 852 (D.C. Cir. 1970)). Failure to do renders the decision arbitrary and capricious. *Id.*

Here, the Commission failed to grapple with several relevant lines of precedent: that operators must provide detailed explanations for untimely contests; that inadequate internal processing systems are not good cause for reopening; that operators must maintain up-to-date addresses of record; and that operators who should expect a penalty for serious violations must take commensurate care to file a timely contest.

### a. Service to an address of record is grounds for denying a motion to reopen.

As discussed *supra* pp. 8 - 9, independent contractors must keep their addresses of record up-to-date. And the Commission has recognized that every operator must keep its address of record updated. See *Ember Contracting*, 30 FMSHRC at 1030; *Mass Transp., Inc.*, 30 FMSHRC 997, 999 (2008); *Harvey Trucking*, 21 FMSHRC 567, 568–69 & n.1 (1999). It has explained that "If MSHA sent the proposed assessment to [an operator's] official address of record, grounds may exist for denying [a] request for relief." *Ember Contracting*, 30 FMSHRC at 1030. The Commission did not even acknowledge this precedent, much less analyze how it applied to ITAC's motion.

In its decision, the Commission appears to have placed emphasis on the fact that ITAC was unable to determine who signed for the delivery of the MSHA penalty assessment packet. See JA 89. However, this misses the point. The Commission should have given no weight to the fact ITAC was never able to determine who signed for the package. The package was delivered to ITAC's address of record, which means service was properly achieved. See 30 C.F.R. § 45.6. The Commission

failed to address why proper service here was not grounds for denying ITAC's motion to reopen.

Directly related to the issue of the address of record is the Secretary's argument that ITAC's failure to fulfill its legal responsibilities should not constitute excusable conduct. See JA 51-52. By ignoring proper service and excusing ITAC's failure to keep its information up-to-date as required by law, the Commission is rewarding operators' violative conduct by affording them another "bite at the apple."

### b. Operators must provide sufficiently detailed explanations for untimely contests.

Operators filing motions to reopen must "provide a sufficiently detailed explanation for its failure to timely contest the proposed penalty assessment" and "disclose with specificity its grounds for relief." *Sun West*, 45 FMSHRC at 142 (quoting *E. Associated Coal*, 30 FMSHRC at 394 & n.2); see also, *e.g.*, *Olmos Contracting 1, LLC*, 39 FMSHRC 2015, 2017 (2017). The Commission routinely holds that when operators fail to adequately explain the reasons for their failure to timely contest penalty assessments, they fail to establish grounds to reopen. In *Panther Creek Mining, LLC*, the Commission denied the operator's

motion with prejudice because the operator, without explanation, asserted that an internal "administrative error" delayed routing of the assessment to its Corporate Safety Director. An operator's motion must "set forth an adequate explanation for its reasons for its delinquency." 46 FMSHRC at 10 (citing *Highland Mining Co.*, 31 FMSHRC 1313, 1316–17 (2009)). "At a minimum, the applicant for relief must provide all known details, including relevant dates and persons involved, and clear explanation that account, to the best of the operator's knowledge, for the failure to submit a timely response . . . ." *Id.* (citing *Lone Mountain Processing, Inc.*, 35 FMSHRC 3342, 3345 (2013)) (emphasis added).

Likewise, in *Coal-Mac LLC,* 46 FMSHRC 33 (2024), the Commission denied with prejudice Coal-Mac's request to open because it asserted, without further detail, that the assessments were in default because its safety manager was unfamiliar with the contest processes. Citing *Revelation Energy, LLC*, 40 FMSHRC 375 (2018), the Commission emphasized, "the party seeking to reopen a final penalty bears the burden of showing that it is entitled to such relief, through a detailed explanation of its failure to timely respond." *Coal-Mac, LLC*, 46

FMSHRC at 34. Again, "at a minimum, the applicant must provide all known details . . . and a clear explanation that accounts . . . for the failure to submit a timely response." *Id.* (citing *Higgins Stone Co.*, 32 FMSHRC 33, 34 (2010)).

More recently, the Commission denied with prejudice an operator's request to reopen because of an unsubstantiated claim it never received the penalty assessment from MSHA. In *Select Materials*, 45 FMSHRC 1011, Select Materials claimed in its application it had not received the assessment packet. The Secretary countered Select Material's claim by demonstrating the U.S. Postal Service originally attempted to deliver the proposed assessment via certified mail to the operator's address. Thereafter, the operator was sent multiple notices indicating the Postal Service's attempts to deliver certified mail. *Id.* at 1012. The Commission noted:

> An operator seeking to reopen a proceeding after a final order is effective bears the burden of establishing an entitlement to extraordinary relief. At a minimum, the applicant for such relief must provide all known details, including relevant dates and persons involved, and a clear explanation that accounts,

> to the best of the operator's knowledge, for the failure to submit a timely response . . . .

*Id.* (citation omitted). The Commission found Select Materials offered no explanation as why it had failed to collect the certified mailings. *Id.* at 1013.

ITAC provided a relatively detailed account of the actions that occurred after its Senior Procurement Officer discovered the penalty packets while checking the mail at its decade-plus old address. But it offered no explanation as to why it was still receiving packages at an address it had vacated 14 years earlier (and regularly checking the mail there), or why it hadn't updated its address of record with MSHA.

The absence of a detailed accounting of why this happened should have been the Commission's focus in determining whether ITAC had established grounds to reopen. With ITAC providing no reasons as to why any of this happened, the Commission should have noted the absence and conducted a reasoned analysis as to why ITAC did not meet its burden, with supporting case cites.

The Commission majority, however, didn't require ITAC to provide the reasons why it hadn't updated its address—the majority answered the question for ITAC. The Commission did not follow its own

precedent, nor did it explain how ITAC's case differed from other similar cases. In sum, the Commission's decision was arbitrary and capricious.

### c. Inadequate internal processing systems are not grounds for reopening.

The Commission has consistently held that "where a failure [to timely contest] results from an inadequate or unreliable internal processing system, the operator has not established grounds for reopening the assessment." *Select Materials*, 45 FMSHRC at 1013 & n.4 (collecting cases); see also, *e.g.*, *Pinnacle Mining Co.*, 30 FMSHRC 1061, 1062 (2008). The Commission took the identical position with *Panther Creek*, also discussed above. By simply blaming an untimely contest on an "administrative error" without a full description of its processes, the Commission held Panther Creek "failed to demonstrate that its "administrative error" was excusable and not a foreseeable result of its own unreliable internal processing system. *Panther Creek*, 46 FMSHRC at 10.

Here, the Commission should have explained why failing to update an address of record for 14 years was not an inadequate internal procedure. It also should have explained how it considered the fact that

ITAC went to its address of record to search for packages it thought were missing (JA 1)—that is, the fact that ITAC knew it had unresolved issues with receiving mail at its old address. The Commission said repeated failures to update an address might be indicative of an inadequate internal process. But ITAC *did* repeatedly fail to update its address. See *supra* pp. 30 - 33. In any event, although the Commission does consider whether an operator's failure is a one-time occurrence, see *Noranda Alumina, LLC*, 39 FMSHRC 441, 444-45 (2017), it has not required evidence of repeated failures to find inadequate internal procedures. See, *e.g.*, *Select Materials*, 45 FMSHRC at 1013 & n.4 (making no mention of repeated failure).

> **d.  The seriousness of the underlying violation, and notice to an operator that it would receive a penalty, are important considerations.**

The Commission has routinely taken into consideration the seriousness of the violation, and the operator's notice that it was going to receive a penalty, in determining whether an operator has good cause for failing to timely contest a penalty. *See, e.g.*, *Panther Creek*, 46 FMSHRC at 11 (denying a motion to reopen and noting that receiving citations put the operator on notice that it would receive a penalty

assessment); *Potter South East*, 45 FMSHRC at 154 n.3 (denying a

motion to reopen and noting the relevance of serious underlying

violations); *Kentucky Fuel Corp.*, 38 FMSHRC 632, 633 (2016) (denying

a motion to reopen partly because the assessment included several

section 104(d) orders[3] for unwarrantable failures); *Olmos Contracting*,

39 FMSHRC at 2018 (denying a motion to reopen and noting the

operator's "aware[ness] that MSHA had found significant safety

concerns at its mine").

Despite having been provided with evidence of both the

seriousness of the underlying violations and ITAC's knowledge of

them—copies of the section 104(d) citation[4] and extensions of the time

to abate the violation (JA 55 – 58), Narrative Findings for a Special

Assessment (JA 10), and a description of the extensive and serious

nature of the structural deficiencies that led to the citation being issued

---

[3] Section 104(d) citations and orders are part of "a 'chain' of increasingly
severe sanctions for certain violations of mandatory standards." *RAG
Cumberland Res. LP v. Fed. Mine Safety & Health Rev. Comm'n*, 272
F.3d 590, 592 (D.C. Cir. 2001).

[4] A section 104(d) citation alleges a "violation of a mandatory standard
that could 'significantly and substantially' contribute to a mine safety or
health hazard, and that [it] was caused by an 'unwarrantable failure' of
the operator to comply with the standard"; it kicks off the "'chain' of
increasingly severe sanctions . . . ." *RAG Cumberland*, 272 F.3d at 592.

in the first place (JA 58, 10, 48 – 49)—the Commission completely failed to apply its precedent regarding those issues.

**5.   The Court should reverse the Commission's decision and deny ITAC's motion without remand.**

This Court generally remands cases to the Commission to apply the correct law to the facts. See, *e.g.*, *Westfall*, 69 F.4th at 911. But it does not when remanding would serve no purpose," such as when "only one conclusion would be supportable." *Donovan ex rel. Anderson* v. *Stafford Constr. Co.*, 732 F.2d 954, 961 (D.C. Cir. 1984). There is no need to remand this case because the evidence supports only the conclusion that ITAC did not have good cause for failing to timely contest the penalty.

ITAC provided nothing to sufficiently explain why it failed to timely contest the penalty assessment. It never explained why it hadn't kept its address up-to-date and it never explained its internal processes—including why, after 14 years, it was still checking its old address for missing mail. It never explained why, after being issued a citation for a serious safety violation, it did not take steps to timely contest the assessment. Even accepting the dubious premise that failing to maintain a current address of record—i.e., violating the Mine Act—

could constitute good cause for reopening, the Commission could not conclude, on this record and given its precedent, that ITAC has good cause.

## Conclusion

The Commission granted ITAC's motion to reopen without justification. ITAC failed to provide any evidence as to *why* it failed to update its address of record. The Commission abused its discretion when it developed its own theory and facts justifying ITACs failure and ignored its own precedent with respect to motions to reopen. This Court should reverse. And because this case is susceptible of only one outcome, the Secretary urges this Court to deny ITAC's motion without remand.

Respectfully submitted,

**SEEMA NANDA**
Solicitor of Labor

**APRIL E. NELSON**
Associate Solicitor

**EMILY TOLER SCOTT**
Counsel for Appellate Litigation

s/ **EDWARD V. HARTMAN**
Senior Trial Attorney
U.S. Department of Labor

Office of the Solicitor
Division of Mine Safety & Health
201 12th Street South, Suite 401
Arlington, VA 22202
(312) 353-1143

Attorneys for the Secretary of
Labor

## Certificate of Compliance with Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, exclude the parts of the document exempted by Fed. R. App. P. 32(f), it contains 8421 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in Microsoft Word with 14-point Century Schoolbook.

s/ **EDWARD V. HARTMAN**
Senior Trial Attorney
U.S. Department of Labor
Office of the Solicitor
Division of Mine Safety & Health
201 12th Street South, Suite 401
Arlington, VA 22202
(312) 353-1143

## Certificate of Service

I certify I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system on June 17, 2024. I certify all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system:

**T. Jason Riley**
Office of General Counsel
Federal Mine Safety and Health Review
Commission 1331 Pennsylvania Ave., NW
Suite 520N Washington, D.C. 20004
jriley@fmshrc.gov

**Allen L. West, Esq.**
**Matt Stevens, Esq.**
Hamilton Stephens Steel +
   Martin, LLC
525 N. Tryon Street
Suite 1400
Charlotte, NC 28202
awest@lawhssm.com
mstevens@lawhssm.com

s/ **EDWARD V. HARTMAN**
Senior Trial Attorney
U.S. Department of Labor
Office of the Solicitor
Division of Mine Safety & Health
201 12th Street South, Suite 401
Arlington, VA 22202
(312) 353-1143