ORAL ARGUMENT NOT YET SCHEDULED
No. 24-1058

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

SECRETARY OF LABOR, MINE SAFETY AND HEALTH
ADMINISTRATION,
*Petitioner*,

---v.---

INDUSTRIAL TURNAROUND CORPORATION AND
FEDERAL MINE SAFETY AND HEALTH REVIEW COMMISSION,
*Respondents*.

ON PETITION FOR REVIEW OF THE FEBRUARY 16, 2024, ORDER OF
THE FEDERAL MINE SAFETY AND HEALTH REVIEW COMMISSION
No. SE 2023-0197

**BRIEF OF RESPONDENT INDUSTRIAL TURNAROUND**
**CORPORATION**

ALLEN L. WEST
ADRIANNE CHILLEMI[1]
ROGER M. STEVENS
525 N. TRYON ST, SUITE 1400
CHARLOTTE, N.C. 28210
(704) 334-1117
*Counsel for Respondent Industrial
TurnAround Corporation*

---

[1]　Ms. Chillemi submitted her Application for Admission to Practice to this Court on July 16, 2024. Her application is pending as of July 17, 2024.

## Certificate as to Parties, Rulings, and Related Cases

Under D.C. Circuit Rule 28(b), Industrial TurnAround Corporation certifies as follows:

**1.     Parties**

The following parties participated in the underlying proceedings before the Federal Mine Safety and Health Review Commission, *ITAC*, SE 2023-0197:

- Industrial TurnAround Corporation

- Federal Mine Safety and Health Review Commission

- Secretary of Labor, Mine Safety and Health Administration

Petitioner in this case is the Secretary of Labor. Respondents are Industrial TurnAround Corporation and the Federal Mine Safety and Health Review Commission. There are no *amici curiae*.

**2.     Ruling Under Review**

The ruling under review is the February 16, 2024, Order of the Federal Mine Safety and Health Review Commission in *ITAC*, No. SE 2023-0197, reopening a penalty assessment that had become a final order of the Commission pursuant to section 105(a) of the Mine Act, 30 U.S.C. § 815(a). The decision is reported at *Sec'y of Lab. v. ITAC*, 46 FMSHRC 80 (Feb. 16, 2024).

**3.**      **Related Cases**

This case has not previously been before this Court. Industrial TurnAround Corporation is not aware of any related cases currently pending in this Court or any other.

# TABLE OF CONTENTS

Summary of Argument ........................................................................................ 1

Argument ........................................................................................................... 2

I.    The Secretary's Petition should be dismissed for lack of jurisdiction. .......... 2

  A.   The Collateral Order Doctrine is a narrow one. ............................................ 4

  B.   The Order is directly analogous to an order vacating an entry of default judgment. ........................................................................................................ 6

  C.   The Secretary's Arguments Misapply the Three-Element Test. .................... 8

     1. The Second Element is not met. ............................................................... 9

     2. The Third element is not met. ................................................................ 10

II.    The Commission did not abuse its discretion in reopening the final order in this matter. ....................................................................................................... 13

  A.   ITAC's failure to update its address with MSHA is excusable neglect under Rule 60(b)(1). .............................................................................................. 13

  B.   The Commission may take administrative notice of facts from the MDRS. 16

  C.   The Commission adhered to its published factors in determining whether good cause existed to reopen the final order in this matter. ................................. 20

  D.   The "Commission is not bound by its precedent" when it adjudicates motions to reopen. ........................................................................................ 27

  E.   The Commission did not ignore relevant precedent ..................................... 29

     1. Failure to update an address of record is not by itself grounds for denying a motion to reopen. ................................................................................ 30

     2. ITAC's explanations are sufficient. ....................................................... 32

     3. The Commission properly assessed ITAC's internal processing systems. 35

     4. The Secretary overstates the importance of factors such as the substantive nature of the underlying violation and notice to an operator that it would receive a penalty. ................................................................. 37

III.   If the Commission abused its discretion, remand is appropriate ................. 38

Conclusion ....................................................................................................... 41

# TABLE OF AUTHORITIES

**Cases**

*Abney v. United States,*

    431 U.S. 651 (1977) ........................................................................13

*Al-Aulaqi v. Panetta,*

    35 F. Supp. 3d 56 (D.D.C. 2014)...........................................................17

*Atchison, Topeka & Santa Fe Ry. Co. v. Wichita Bd. of Trade,*

    412 U.S. 800 (1973) ........................................................................27

*Beberman v. Blinken,*

    No. CV 20-873 (TJK), 2021 WL 1614816 (D.D.C. Apr. 26, 2021).....................8

*Bell v. New Jersey,*

    461 U.S. 773 (1983) ..........................................................................3

*Blue v. D.C. Pub. Sch.,*

    764 F.3d 11 (D.C. Cir. 2014); ...............................................................5

*BNSF Ry. Co. v. Surface Transp. Bd.,*

    453 F.3d 473 (D.C. Cir. 2006)....................................................... 18, 20

*CalPortland Co., Inc. v. Fed. Mine Safety & Health Rev. Comm'n,*

    839 F.3d 1153 (D.C. Cir. 2016)...............................................................8

*Cason v. District of Columbia Dep't of Corrections,*

    No. 06-7203, 2007 WL 2892694 (D.C. Cir. June 15, 2007)................................7

*Coopers & Lybrand v. Livesay,*

    437 U.S. 463 (1978) ..........................................................................8

*Dhiab v. Obama,*

    787 F.3d 563 (D.C. Cir. 2015)..............................................................11

*Digital Equip. Corp. v. Desktop Direct, Inc.*,

    511 U.S. 863 (1994) ............................................5

*Doe v. Exxon Mobile Corp.*,

    473 F.3d 345 (D.C. Cir. 2007)...............................4

*Donovan v. Stafford Const. Co.*,

    732 F.2d 954 (D.C. Cir. 1984)...............................40

*Fla. Power & Light Co. v. Lorion*,

    470 U.S. 729 (1985) ................................... 36, 41

*Gilmore v. Palestinian Interim Self-Gov't Auth.*,

    685 F. Supp. 2d 28 (D.D.C. 2010)...........................7

*In re Décor Holdings, Inc.*,

    86 F.4th 1021 (2d Cir. 2023) ..............................7

*Khadr v. United States*,

    529 F.3d 1112 (D.C. Cir. 2008)..............................3

*Laguna Royalty Co. v. Marsh*,

    350 F.2d 817 (5th Cir. 1965) ..............................14

*Lone Mountain Processing, Inc. v. Sec'y of Lab.*,

    709 F.3d 1161 (D.C. Cir. 2013)..................... 27, 28

*McLish v. Roff*,

    141 U.S. 661 (1891) ......................................5

*Meredith v. Fed. Mine Safety & Health Rev. Comm'n*,

    177 F.3d 1042 (D.C. Cir. 1999).............................3

*Microsoft Corp. v. Baker*,

    582 U.S. 23 (2017) .......................................5

*Mitchell v. Forsyth*,

    472 U.S. 511 (1985) ...................................................................13

*Mohawk Indus., Inc. v. Carpenter*,

    558 U.S. 100 (2009) ..................................................................4, 9

*Noranda Alumina, L.L.C. v. Perez*,

    841 F.3d 661 (5th Cir. 2016) ................................. 27, 28, 29, 30, 31, 40

*Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*,

    507 U.S. 380 (1993) ..................................................................2, 14

*Union Elec. Co. v. F.E.R.C.*,

    890 F.2d 1193 (D.C. Cir. 1989) ...........................................................17

*United States v. Fokker Servs. B.V.*,

    818 F.3d 733 (D.C. Cir. 2016) ...............................................................8

*Wiggins v. Universal Protection Services, LLC*,

    2021 WL 7287368 (3d. Cir. Nov. 3, 2021) ...........................................7

*Will v. Hallock*,

    546 U.S. 345 (2006) ..................................................................5, 10

**Statutes**

30 U.S.C. § 815(a) ...........................................................................6

30 U.S.C. § 816 ..............................................................................39

30 U.S.C. § 816(b) ...........................................................................3

**Other Authorities**

Aaron-Andrew P. Bruhl, *The Remand Power and the Supreme Court's Role*, 96
    Notre Dame L. Rev. 171, 179 (2020) .................................................40

*About FMSHRC*, Fed. Mine Safety and Health Rev. Comm'n,
    https://fmshrc.gov/about (last visited July 1, 2024) .............................39

Adam R. Moore, *A Textualist Defense of A New Collateral Order Doctrine*, 99
Notre Dame L. Rev. Reflection 1, 11 (2023) ....................................................9, 10

*Data and Reports*, MINE SAFETY AND HEALTH ADMIN.,
https://www.msha.gov/data-and-reports (last visited July 1, 2024)....................17

*Mine Data Retrieval System*, MINE SAFETY AND HEALTH ADMIN.,
https://www.msha.gov/data-and-reports/mine-data-retrieval-system ........... 18, 36

*Mine Inspections*, MINE DATA RETRIEVAL SYSTEM,
https://arlweb.msha.gov/drs/drshome.htm ..........................................................19

*Requests to Reopen*, FED. MINE SAFETY AND HEALTH REV. COMM'N,
https://fmshrc.gov/content/requests-reopen ........................................... 20, 21, 39

**Rules**

Fed. R. Civ. P. 54 ...............................................................................................5

Fed. R. Civ. P. 55 ...............................................................................................7

Fed. R. Civ. P. 60 ...............................................................................................2

Fed. R. Civ. P. 60(b) ................................................................................... 13, 16

Fed. R. Civ. P. 60(b)(1)....................................................................................14

Fed. R. Evid. 201 .............................................................................................17

**Regulations**

29 C.F.R. § 2700.1 (2024) ...............................................................................16

29 C.F.R. § 2700.1(b) (2024).............................................................................7

29 C.F.R. § 2700.78 (2024) .............................................................................12

Procedural Rules, 85 Fed. Reg. 63,047, 63,408 (Oct. 6, 2020) (to be codified at 29
C.F.R. pt. 2700)................................................................................................39

**Treatises**

§ 2871 AVAILABILITY OF REVIEW, 11 FED. PRAC. & PROC. CIV. § 2871 (3d ed.).......8

**Federal Mine Safety and Health Review Commission Decisions**

*Jim Walter Res., Inc. v. Sec'y of Lab.*,

  15 FMSHRC 782 (May 25, 1993)...........................................................................6

*Sec'y of Lab. v. Coal Prep. Servs., Inc.*,

  17 FMSHRC 1529 (Sept. 21, 1995).......................................................................7

*Sec'y of Lab. v. Coal-Mac LLC*,

  46 FMSHRC 33 (Jan. 5, 2024).............................................................................34

*Sec'y of Lab. v. D & S Mining & Expl.*,

  36 FMSHRC 2657 (Oct. 3, 2014) ........................................................................32

*Sec'y of Lab. v. Double Bonus Coal Co.*,

  32 FMSHRC 1155 (Sept. 15, 2010)......................................................................25

*Sec'y of Lab. v. Dyno Nobel*,

  2024 WL 2977604 (June 11, 2024)........................................................ 25, 26, 27

*Sec'y of Lab. v. Ember Contracting*,

  30 FMSHRC 1029 (Nov. 24, 2008) ......................................................................31

*Sec'y of Lab. v. Harvey Trucking*,

  21 FMSHRC 567 (June 11, 1999).........................................................................31

*Sec'y of Lab. v. Hoover Excavating, Inc.*,

  35 FMSHRC 317 (Feb. 12, 2013) ........................................................................31

*Sec'y of Lab. v. Mass Transp., Inc.*,

  30 FMSHRC 997 (Nov. 6, 2008) .........................................................................31

*Sec'y of Lab. v. Noranda Alumina, LLC*,

  37 FMSHRC 2731 (Dec. 18, 2015).......................................................................28

*Sec'y of Lab. v. Noranda Alumina, LLC*,

    39 FMSHRC 441 (Mar. 29, 2017)................................................................ 19, 29

*Sec'y of Lab. v. Oak Grove Res., LLC*,

    33 FMSHRC 2378 (Oct. 11, 2011) ......................................................................24

*Sec'y of Lab. v. Olmos Contracting 1, LLC*,

    39 FMSHRC 2015 (Nov. 15, 2017) .....................................................................34

*Sec'y of Lab. v. Panther Creek Mining, LLC*,

    46 FMSHRC 9 (Jan. 4, 2024)....................................................................... 34, 37

*Sec'y of Lab. v. Peabody Twentymile Mining, LLC*,

    39 FMSHRC 1323 (July 31, 2017).......................................................................19

*Sec'y of Lab. v. Potter South East*,

    45 FMSHRC 152 (Mar. 22, 2023)........................................................................38

*Sec'y of Lab. v. Scabtron*,

    33 FMSHRC 2167 (Sept. 26, 2011) .....................................................................32

*Sec'y of Lab. v. Select Materials*,

    45 FMSHRC 1011 (Dec. 6, 2023)........................................................................35

*Sec'y of Lab. v. Shelter Creek Cap., LLC*,

    34 FMSHRC 3053 (Dec. 11, 2012)......................................................................24

*Sec'y of Lab. v. Southwest Rock Products, Inc.*,

    45 FMSHRC 747 (Aug. 30, 2023) .......................................................................23

*Sec'y of Lab. v. Sun West Acquisition Corporation*,

    45 FMSHRC 141 (Mar. 13, 2023)................................................................ 33, 35

*Sec'y of Lab. v. WESCO*,

    40 FMSHRC 742 (May 4, 2018) .................................................................. 19, 32

## GLOSSARY OF ABBREVIATIONS

| | |
|---|---|
| ALJ | Administrative Law Judge |
| Commission | Federal Mine Safety and Health Review Commission |
| ITAC | Industrial TurnAround Corporation (the Respondent) |
| JA | Citations to the Joint Appendix |
| MDRS | Mine Data Retrieval System |
| MSHA | Federal Mine Safety and Health Administration |
| Ord. | Citations to the Underlying Federal Mine Safety and Health Review Commission Order |
| Order | The Underlying Federal Mine Safety and Health Review Commission Order |
| Sec'y Br. | Citations to the Secretary of Labor's Principal Brief |

## Summary of Argument

This Court lacks jurisdiction to hear the Secretary's Petition under the collateral order doctrine: the Commission's Order is neither a final order nor does it fall within the narrow scope of the collateral order doctrine. Accordingly, this Court should dismiss the Secretary's Petition.

In the alternative, should this Court elect to accept the Secretary's flawed jurisdictional arguments, the Court should affirm the findings of the Commission and deny the Secretary's Petition. The Commission properly exercised its discretion in allowing ITAC the ability to be heard on the underlying penalty assessment. Rather than allowing ITAC a "second bite at the apple" as argued by the Secretary, the Commission's Order is consistent with precedent of this Court and the Commission favoring determination on the merits over the harsh remedy of judgment by default. Thus, the Secretary's Petition should be denied.

Here, due to inadvertence and excusable oversight, ITAC did not update its address of record with MSHA.[2] However, once ITAC discovered its mistake, it took immediate, decisive action to correct the issue and request hearing on the merits.[3] JA 001–02. Equity is built into the law precisely to address situations like

---

[2]  For reasons unbeknownst to ITAC, someone not associated with or employed by ITAC signed for the proposed penalty assessment when it was served by U.S. Postal Service Priority Mail on an incorrect address.

[3]  Although beyond the scope of the issues on appeal, ITAC has substantive arguments regarding factual error in the Secretary's proposed penalty assessment

1

this: "The determination of what sorts of neglect will be considered 'excusable' is an equitable one, taking account of all relevant circumstances." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 381 (1993); *see also* Fed. R. Civ. P. 60.

ITAC faces a significant financial penalty and other repercussions associated with a serious violation of the Mine Act, and allowing a decision on the merits of the case is in the interest of justice and is not an abuse of discretion. As the Commission properly found, with consideration to its own precedent and procedural rules, ITAC's failure to update its address with MSHA is excusable neglect under Fed. R. Civ. P. 60(b)(1). Granting a one-time chance to reopen a final order is consistent with due process considerations and applicable precedent.

Finally, should the Court (i) take up the Secretary's Petition under the collateral order doctrine and (ii) find that the Commission abused its discretion in allowing ITAC to be heard on the merits, this Court should remand the matter to the Commission and decline the Secretary's invitation to reverse the Commission's Order.

## Argument

### I.   The Secretary's Petition should be dismissed for lack of jurisdiction.

---

that it intends to make before the presiding Administrative Law Judge upon the dismissal of the Secretary's Petition and the reopening of the underlying matter.

This Court, as all federal courts, is a court of limited jurisdiction: "[C]ourts of appeals have only [the] jurisdiction [that] Congress has chosen to confer upon them regardless of the actions of the parties, even when one of those parties is the Executive Branch." *Khadr v. United States*, 529 F.3d 1112, 1117 (D.C. Cir. 2008) (internal citation omitted). Regarding administrative decisions, this Court has reiterated the language of the United Supreme Court that "[t]he strong presumption is that judicial review will be available only when agency action becomes final." *See Meredith v. Fed. Mine Safety & Health Rev. Comm'n*, 177 F.3d 1042, 1047 (D.C. Cir. 1999) (citing *Bell v. New Jersey*, 461 U.S. 773, 778 (1983)). This language is consistent with the Mine Act itself, which provides in pertinent part: "The Secretary may also obtain review or enforcement of any ***final order*** of the Commission by filing a petition for such relief in the United States court of appeals for the circuit in which the alleged violation occurred or in the Court of Appeals for the District of Columbia Circuit." 30 U.S.C. § 816(b) (emphasis added). In her Petition, the Secretary acknowledges that this statutory grant of jurisdiction is inapplicable, stating that the Commission's Order "falls outside the scope of a final action." Sec'y Br. 22–23. Conceding that there is no applicable statutory grant of jurisdiction for this Court to hear her Petition, the Secretary instead advances an argument that the Order falls within the "collateral order doctrine." Sec'y Br. 23.

The Secretary's argument, however, (i) fails to address the narrowness of the collateral order doctrine, (ii) ignores precedent from substantively analogous cases, and (iii) misapplies the three-element test. Thus, because this Court lacks jurisdiction to hear the Secretary's Petition, the underlying matter should be returned to the Chief Administrative Law Judge for further proceedings as set forth in the Commission's Order.

### A.     The Collateral Order Doctrine is a narrow one.

"[T]he Supreme Court has *repeatedly* emphasized the narrowness of the collateral order doctrine." *Doe v. Exxon Mobile Corp.*, 473 F.3d 345, 349 (D.C. Cir. 2007). The collateral order doctrine applies when "deferring review until final judgment so imperils the interest as to justify the cost of allowing immediate appeal of the entire class of relevant orders." *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 108 (2009). When presented with the issue of jurisdiction pursuant to the collateral order doctrine, this Court has consistently adhered to the Supreme Court's guidance and refused to expand the doctrine beyond its intended narrow application. In the *Doe v. Exxon Mobile Corp.* decision, this Court quoted the following language of the Supreme Court:

> [T]he "narrow" exception should stay that way and never be allowed to swallow the general rule . . . that a party is entitled to a single appeal, to be deferred until final judgment has been entered, in which claims of district court error at any stage of the litigation may be ventilated.

*Doe*, 473 F.3d at 349 (citing *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 868 (1994). Quoting from *Will v. Hallock*, this Court also noted that the Supreme Court "summarized its approach to the collateral order doctrine by noting that 'we have meant what we said; although the Court has been asked many times to expand the 'small class' of collaterally appealable orders, we have instead kept it narrow and selective in its membership.'" *Doe*, 473 F.3d at 349 (citing *Will v. Hallock*, 546 U.S. 345, 350 (2006)).

"From the very foundation of our judicial system, the general rule has been that the whole case and every matter in controversy in it must be decided in a single appeal." *Microsoft Corp. v. Baker*, 582 U.S. 23, 36–37 (2017) (citing *McLish v. Roff*, 141 U.S. 661, 665–66 (1891) (internal quotations omitted)). Additionally, the "policy of the federal courts, dating from the Judiciary Act of 1789, disfavor[s] piecemeal appellate review." *Blue v. D.C. Pub. Sch.*, 764 F.3d 11, 15 (D.C. Cir. 2014); *see also* Fed. R. Civ. P. 54 advisory committee's note to 1946 amendment ("The historic rule in the federal courts has always prohibited piecemeal disposal of litigation and permitted appeals only from final judgments except in those special instances covered by statute."). The Commission's Order is not itself a final judgment. Instead, the Commission's Order vacates a final order of the Commission and remands the case for further proceedings. Thus, while the form of the Commission's Order is slightly different, its substance is directly

analogous to an entry of default judgment—decidedly not within the "small class of orders" that come within the collateral order doctrine.

**B.    The Order is directly analogous to an order vacating an entry of default judgment.**

Pursuant to the Mine Act, "an operator who wishes to contest a proposed penalty must notify the Secretary of Labor no later than 30 days after receiving the proposed penalty assessment." JA 088. "If the operator fails to notify the Secretary, the proposed penalty assessment is deemed a final order of the Commission." *Id.* (citing 30 U.S.C. § 815(a)). "Under appropriate circumstances," the Commission asserts the "jurisdiction to reopen uncontested assessments that have become final Commission orders." JA 088 (citing *Jim Walter Res., Inc. v. Sec'y of Lab.*, 15 FMSHRC 782, 786–89 (May 25, 1993)). Commission precedent indicates that "default is a harsh remedy and that, if the defaulting party can make a showing of good cause for a failure to timely respond, the case may be reopened and appropriate proceedings on the merits permitted." JA 089.

Rule 5 of the Federal Rules of Civil Procedure allows courts to "set aside an entry of default for good cause, and [] set aside a final default judgment under Rule 60(b)." Fed. R. Civ. P. 55. The Commission and its Judges are "guided so far as practicable by the Federal Rules of Civil Procedure." JA 088–89 (citing 29 C.F.R. § 2700.1(b) (2024)). When considering motions to reopen, the Commission "has found guidance in Rule 60(b) of the Federal Rules of Civil Procedure, under which

the Commission may relieve a party from a final order of the Commission on the basis of mistake, inadvertence, excusable neglect, or other reason justifying relief." JA 088. The Commission, therefore, considers a final order of the Commission pursuant to 30 U.S.C. § 815 under the same standards applicable to an entry of default judgment. *See* JA 088 (citing *Sec'y of Lab. v. Coal Prep. Servs., Inc.*, 17 FMSHRC 1529, 1530 (Sept. 21, 1995)).

Notably, "[t]he caselaw in this circuit directly holds that the collateral order doctrine does not apply to orders vacating an entry of default[] [and] the prevailing law on the collateral order doctrine suggests that such orders should not fall within its scope." *Gilmore v. Palestinian Interim Self-Gov't Auth.*, 685 F. Supp. 2d 28, 30 (D.D.C. 2010). *See, e.g., Cason v. District of Columbia Dep't of Corrections*, No. 06-7203, 2007 WL 2892694, at *1 (D.C. Cir. June 15, 2007); *In re Décor Holdings, Inc.*, 86 F.4th 1021, 1024 (2d Cir. 2023) ("[A]s a general matter, five circuits have held that an order setting aside a judgment pursuant to Federal Rule of Civil Procedure 60(b) is not an appealable, final order."); *Wiggins v. Universal Protection Services, LLC*, 2021 WL 7287368 (3d. Cir. Nov. 3, 2021). *See also* § 2871 AVAILABILITY OF REVIEW, 11 FED. PRAC. & PROC. CIV. § 2871 (3d ed.) ("An order granting a motion under Rule 60(b) and ordering a new trial is purely interlocutory and not appealable."). Because the Commission's Order is directly

analogous to an order vacating an entry of default, this Court should apply the precedent of this and other circuits and dismiss the Secretary's Petition.

### C. The Secretary's Arguments Misapply the Three-Element Test.

For the collateral order doctrine to apply, each of the following three elements must be met: (1) the Commission's Order must "conclusively determine[] a disputed question;" (2) the Commission's Order must "resolve[] an important issue completely separate from the merits of the action;" and (3) the Commission's Order must be "effectively unreviewable on appeal from a final judgment." Sec'y Br. 23 (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468 (1978)). "Because this test is conjunctive, the Court need only determine that each challenged order fails on at least one of the three prongs." *Beberman v. Blinken*, No. CV 20-873 (TJK), 2021 WL 1614816, at *2 (D.D.C. Apr. 26, 2021), aff'd in part, appeal dismissed in part, 61 F.4th 978 (D.C. Cir. 2023); *see also CalPortland Co., Inc. v. Fed. Mine Safety & Health Rev. Comm'n*, 839 F.3d 1153, 1160 (D.C. Cir. 2016); *see also United States v. Fokker Servs. B.V.*, 818 F.3d 733, 748 (D.C. Cir. 2016)).

In this case, the Commission's Order (a) is neither important (as such term has been used in this context) nor separate from the merits and (b) is not unreviewable on appeal from a final judgment. In addition, the Secretary did not exhaust all possible steps to avoid the Commission's Order. Thus, the

Commission's Order does not meet at least two of the three elements of the collateral order doctrine.

### 1.    The Second Element is not met.

Regarding the second element, the Commission's Order is intertwined with merits of the action. The merits of the action concern the Secretary's proposed penalty assessment, while the Commission's Order conclusively determines whether ITAC's inadvertence in updating its address with MSHA was excusable. The question here is whether ITAC's inadvertence in updating its address is an issue "sufficiently strong to overcome the usual benefits of deferring appeal until litigation concludes." *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 107 (2009); *see e.g.*, Adam R. Moore, *A Textualist Defense of A New Collateral Order Doctrine*, 99 Notre Dame L. Rev. Reflection 1, 11 (2023). The question of whether ITAC's inadvertence in updating its address was excusable is not a sufficiently strong issue to reach the threshold established by the Supreme Court's precedent.

For an issue to meet this high threshold, the Court must find "some further characteristic that merits appealability . . . [and] that something further boils down to a judgment about the value of the interests that would be lost through rigorous application of a final judgment requirement." *Will*, 546 U.S. at 351–52. In *Will v. Hallock*, the Supreme Court observed that "[i]n each [such] case, some particular value of a high order was marshaled in support of the interest in avoiding trial:

honoring the separation of powers, preserving the efficiency of government and the initiative of its officials, respecting a State's dignitary interests, and mitigating the government's advantage over the individual." *Id.* at 345, 352–53; *see, e.g.*, Adam R. Moore, *A Textualist Defense of A New Collateral Order Doctrine*, 99 Notre Dame L. Rev. Reflection 1, 11 (2023). Moreover, it is "not mere avoidance of a trial, but avoidance of a trial that would imperil a substantial public interest, that counts when asking whether an order is 'effectively' unreviewable if review is to be left until later." *Will*, 546 U.S. at 353.

In an attempt to frame the Commission's Order as an "important issue," the Secretary paints the Commission's motion to reopen as an abuse of discretion intended to weaken the Mine Act. Sec'y Br. 26. However, and simply put, "there are no interests at stake here that would be lost through rigorous application of a final judgment requirement." *Will*, 546 U.S. at 351–52. The issue in question here does not resolve an "important" issue completely separate from the merits of the action, is not collateral, and can certainly be appealed at the end of the case.

### 2. The Third element is not met.

As to the third element—whether the issue may be preserved for decision upon appeal from a final judgment—there is no reason why the Secretary cannot advance the same arguments after a determination on the merits. If ITAC is successful on the merits of its challenge to the proposed penalty assessment, the

Secretary can appeal both the Commission's Order and the decision of the Administrative Law Judge. If ITAC is unsuccessful, either the issue will be moot, or the Secretary can cross appeal from the Commission's Order at that time. In neither circumstance is meaningful appeal for the Secretary lost, as numerous cases cited *supra* have determined in the context of default judgment.

Proceeding on the merits would simply require the Secretary to engage in ordinary and usual activity—proving her case—and explaining why "the Proposed Assessment contains findings which are inconsistent with the record of this matter, including, among other things, the Structural Investigation of J. Jarrod During, P.E. of MSHA, dated January 4, 2023." JA 002 (as alleged by ITAC in its Motion to Reopen). Doing so would be "in the interest of justice" as stated in the Commission's Order. JA 090. Additionally, as this Court held in *Dhiab v. Obama*, "the Supreme Court has consistently declined to find litigation burdens sufficient to bring a case within the narrow scope of the collateral order doctrine." *Dhiab v. Obama*, 787 F.3d 563, 567 (D.C. Cir. 2015). The Secretary claims that the Commission's reopening of the proposed penalty assessment would "compel[] [it] to participate in Commission proceedings otherwise precluded by the final order." Sec'y Br. 24. However, the Secretary does not have a right that will be lost by waiting to decide after a final judgment is entered. There is no such concept as

governmental immunity from having to ***prosecute*** an offense. If such a concept existed, it would be anathema to the norms of American jurisprudence.

The Secretary's argument regarding the third element is also misleading, because the Secretary had the procedural right to petition the Commission for reconsideration of its Order. By rule, the Secretary could have filed a petition for reconsideration with the Commission within ten days after the Commission issued its Order. 29 C.F.R. § 2700.78. However, the Secretary either failed to do so or chose not to, and instead pursued judicial review of the Commission's Order with this Court even though she was fully aware that this Order falls outside the scope of a final action. *See* Sec'y Br. 22–23.

The Secretary compares her actions to those of the petitioner in *CalPortland* but fails to mention that unlike herself, the petitioner in *CalPortland* actually exhausted all possible steps, including a petition for reconsideration. *See CalPortland Co., Inc.*, 839 F.3d at 1160 ("In fact, the Commission denied *CalPortland's* petition for reconsideration on February 22, 2016, which suggests that its decision was not merely 'tentative or subject to revision.'"). By failing to file a motion for reconsideration, the Secretary herself created the unreviewable, fully consummated decision she complains about. *Cf. Mitchell v. Forsyth*, 472 U.S. 511, 527 (1985) (citing *Abney v. United States,* 431 U.S. 651, 659 (1977) ("There

are simply no further steps that can be taken in the District Court to avoid the trial the defendant maintains is barred.").

The Commission's Order does not satisfy the second and third elements of the collateral order doctrine. As such, the Court does not have jurisdiction to hear this case, and the Secretary's Petition should be dismissed.

## II.     The Commission did not abuse its discretion in reopening the final order in this matter.

### A. ITAC's failure to update its address with MSHA is excusable neglect under Rule 60(b)(1).

The Federal Rules of Civil Procedure specifically provide an avenue for relief in situations of excusable neglect. Fed. R. Civ. P. 60(b). As the Commission determined, the facts of this matter allow for such relief. JA 089–90. By not updating its address with MSHA, ITAC failed to receive notice of an MSHA proposed penalty assessment. ITAC's failure to timely respond to the proposed penalty assessment resulted in a conversion of the penalty assessment to a final order. JA 089 ("[A]lthough USPS indicated that the assessment had been delivered to ITAC's former address and 'signed by ITAC,' the recipient of delivery is unclear.") The proposed penalty assessment became a default solely because ITAC did not update its address and, as a result, did not receive notice of the proposed penalty assessment. The Commission adheres to the Federal Rules of Civil Procedure, and circumstances like this are precisely why Rule 60(b) exists. As

courts in other circuits have recognized, Fed. R. Civ. P. 60(b) "is broadly phrased and many of the itemized grounds are overlapping, freeing Courts to do justice in hard cases where the circumstances generally measure up to one or more of the itemized grounds." *Laguna Royalty Co. v. Marsh*, 350 F.2d 817, 823 (5th Cir. 1965). "Rule 60(b) is to be construed liberally to do substantial justice." *Id*.

As found by the Commission, ITAC is entitled to relief because not updating its address with the MSHA constitutes excusable neglect under Rule 60(b)(1). Excusable neglect "is understood to encompass situations in which the failure to comply with a filing deadline is attributable to negligence." *Pioneer*, 507 U.S. at 394 (citing Fed. R. Civ. P. 60(b)(1)). Excusable neglect is an "elastic concept and is not limited strictly to omissions caused by circumstances beyond the control of the movant." *Id*. at 392 (internal citations omitted).

When considering whether neglect is excusable, the Commission's "determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Id*. at 395. The relevant circumstances include "the danger of prejudice to the [non-moving party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id*. at 395. All of these circumstances point to a finding that any neglect on the part of ITAC was excusable.

First, there is no danger of prejudice to the Secretary. There is no prejudice in affording ITAC the opportunity to defend itself against the substance of the Secretary's allegations—especially in the face of "findings which are inconsistent with the record of this matter." JA 002. As described above, the Secretary has no way of knowing whether a party will contest the citation or not at the outset, and therefore the Secretary should have been prepared to prosecute this matter once she initiated it. There is no prejudice in requiring the Secretary to prosecute a matter she initiated and intended to prosecute.

Second, the reason for the delay was simply ITAC's failure to update its address with MSHA, a mistake that ITAC promptly corrected by "taking steps to prevent reoccurrence of this situation by updating its address of record with MSHA." JA 089. After learning of the proposed penalty assessment, ITAC took immediate steps to update its address and did not delay. JA 089–90. Finally, ITAC acted promptly and in good faith by filing a motion to reopen on June 5, 2023, eleven days after it received notice of the proposed penalty assessment. JA 090. ITAC, as the Commission found, "demonstrated good cause for its failure to timely respond and acted in good faith by timely filing its request to reopen." *Id.*

The Commission reopened the matter "in the interest of justice . . . not[ing], however, that a repeated failure to update one's address of record would indicate an inadequate internal process and may result in future motions to reopen being

denied." JA 090. This reasoning is at odds with the Secretary's attempts to paint the Commission's Order as giving ITAC another "bite at the apple." Sec'y Br. 26, 37. ITAC never had a first "bite at the apple," as it did not receive timely notice, and as a result, never had the opportunity to substantively respond to the Secretary's allegations. Accordingly, the Commission is simply allowing ITAC to defend itself against the Secretary's untested allegations in the interest of justice, which Congress expressly contemplated when it authorized Fed. R. Civ. P. 60(b). By no means is the Commission giving ITAC a blank check: it is quite clear from the Commission's Order that ITAC is unlikely to receive such recourse for a similar violation in the future. JA 090. As a result, the Commission's reopening of the matter was proper and allowed as permitted by Fed. R. Civ. P. 60(b).

## B. The Commission may take administrative notice of facts from the MDRS.

The Commission "is an adjudicative agency that provides administrative trial and appellate review of legal disputes arising under the Federal Mine Safety and Health Act of 1977, 30 U.S.C. § 801 et seq." 29 C.F.R. § 2700.1 (2024). The Secretary alleges that the Commission based its Order on a *sua sponte* generation of facts, which constitutes an abuse of discretion. However, the Commission is well within its rights to take administrative notice of "technical or scientific facts that are within the agency's area of expertise." *Union Elec. Co. v. F.E.R.C.*, 890 F.2d 1193, 1202 (D.C. Cir. 1989).

Administrative notice is simply an extension of judicial notice, and "judicial notice may be taken of public records and government documents available from reliable sources." *Al-Aulaqi v. Panetta*, 35 F. Supp. 3d 56, 67 (D.D.C. 2014) (internal citations omitted). Additionally, Federal Rule of Evidence 201 provides that "[t]he court may judicially notice a fact . . . because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Rule 201 also states that the court "may take judicial notice on its own . . . and at any stage of the proceeding." Fed. R. Evid. 201. While "a party is entitled to be heard on the propriety of taking judicial notice and the nature of the fact to be noticed[,]" nothing prevents a court from taking judicial notice of an adjudicative fact *sua sponte*. *Id*.; *see also Al-Aulaqi*, 35 F. Supp. at 67–68.

MSHA has a publicly accessible information data source, the MDRS, that affords the public and the Commission the ability to "[f]ind a range of current and historical data for individual mines." *Data and Reports*, MINE SAFETY AND HEALTH ADMIN., https://www.msha.gov/data-and-reports (last visited July 16, 2024). The MDRS also allows the public to retrieve data about contractors that work in mines. One such contractor is ITAC, whose records are found in the MDRS under Contractor ID D737. The public can easily find MSHA citations issued to contractors, including ITAC, using MDRS. *Mine Data Retrieval System*, MINE

SAFETY AND HEALTH ADMIN., https://www.msha.gov/data-and-reports/mine-data-retrieval-system (follow "Contractors" hyperlink; then search for ITAC's Contractor ID, "D737;" then choose "Overview," scroll down to "Citations, Orders and Safeguards.") (last visited July 16, 2024). A search of the MDRS under ITAC's Contractor ID allows the public to pull up a "Violations Report," which "provides data on the contractor's MSHA violations, to include: mine ID, operator name, violation issue date, violation number, case number, final order date, termination date, section of the Act, S&S indicator, as well as penalty information." *Id*.

ITAC's MDRS Violations Report from 2009 to the present confirms what the Commission wrote in its Order: "ITAC has received only two citations since 2009, including the citation at issue." JA 089. This information, easily accessible by the public at large, and certainly accessible by the Commission and the Secretary, is not contestable. The MDRS is the Secretary's own data, and it is altogether unlikely that the Secretary would be able to successfully contest its own data. *See BNSF Ry. Co. v. Surface Transp. Bd.*, 453 F.3d 473, 486 (D.C. Cir. 2006) (noting that a party may not be afforded a chance to contest the evidence if the challenging party could not make a good showing it could successfully contest the evidence).

There are numerous examples in the Commission's publicly available Orders that indicate use of public data by the Commission in its proceedings. In

*Peabody Twentymile Mining*, the Commission observed that "public records dating back to November 1, 1995, establish that over 800 inspections have occurred at the mine since 1995." *Sec'y of Lab. v. Peabody Twentymile Mining, LLC*, 39 FMSHRC 1323, 1349 (July 31, 2017) (citing *Mine Inspections*, MINE DATA RETRIEVAL SYSTEM, https://arlweb.msha.gov/drs/drshome.htm (search for Foidel Creek's Mine ID, "0503836;" then choose "Inspections," enter "1/1/1995" as the Beginning Date, and click "Get Report[.]"). In another example, *Noranda*, the Commission, presumably reviewing its public docket, found that the "operator does not have a history demonstrating a general carelessness or lack of attention to MSHA assessments." *Sec'y of Lab. v. Noranda Alumina, LLC*, 39 FMSHRC 441, 445 (Mar. 29, 2017). Another example may be found in *WESCO*, where the Commission, again presumably reviewing its public docket, found that "WESCO has not filed any other motions to reopen with the Commission in the last two years." *Sec'y of Lab. v. WESCO*, 40 FMSHRC 742, 742 (May 4, 2018). The Commission, as the adjudicative agency providing appellate review of legal disputes arising under the Federal Mine Safety and Health Act of 1977, is certainly within its rights to take administrative notice of facts within the Secretary's own data, namely that "ITAC has received only two citations since 2009, including the citation at issue." Fed. R. Evid. 201; JA 089.

Finally, the Secretary failed to challenge the Commission's evidence by neglecting to file a petition for reconsideration. *See, e.g., BNSF Ry. Co.*, 453 F.3d at 486 ("Due process requires only a 'meaningful opportunity' to challenge new evidence . . . which opportunity BNSF failed to take in its application for rehearing." (internal citations omitted)).

## C. The Commission adhered to its published factors in determining whether good cause existed to reopen the final order in this matter.

On its public website, the Commission provides "Guidance for Asking the Commission to Reopen Final Orders so that a Proposed Penalty may be Contested." *Requests to Reopen*, FED. MINE SAFETY AND HEALTH REV. COMM'N, https://fmshrc.gov/content/requests-reopen (last visited on July 16, 2024). Pursuant to the Commission's guidance, in a motion to reopen a final order, a movant must explain "that the failure to timely contest a penalty resulted from excusable neglect, mistake, or other good cause, or it must demonstrate that the order is not final." *Id*. In considering such a motion,

> [t]he Commission has considered a number of factors in determining whether good cause exists: 1. The error does not reflect indifference, inattention, inadequate or unreliable office procedures or general carelessness; 2. The error resulted from mistakes that the operator typically does not make; 3. Procedures to prevent, identify and correct such mistakes have been adopted or changed, as appropriate; 4. In cases where receipt of the penalty assessment is an issue, the operator maintains proper addresses with the Mine Safety and Health Administration (MSHA).

*Id*. The Commission website does not require that every factor be met. *Id*.

In its Order, the Commission considered arguments advanced by both the Secretary of Labor and ITAC, and after careful review, determined that ITAC "demonstrated good cause for its failure to timely respond and acted in good faith by timely filing its request to reopen." JA 090. The Commission's finding regarding ITAC's failure to timely respond to MSHA revolved around two points: (1) U.S. Postal Service tracking information regarding "recipient of delivery [of the assessment] was unclear" and (2) "ITAC may not have been aware that its former address was listed as its address of record with MSHA." JA 089. The proposed penalty assessment was sent by MSHA using U.S. Postal Service Priority Mail 2-Day. JA 012. U.S. Postal Service data "indicated that the assessment had been delivered to ITAC's former address and 'signed by ITAC.'" JA 089. However, ITAC never received the assessment and despite the U.S. Postal Service's indication that ITAC signed for the envelope containing the proposed penalty assessment, ITAC no longer maintains an office at that location and "has otherwise been unable to determine who signed for delivery of the Envelope in April 2023." *Id*.

The Secretary takes for granted that the U.S. Postal Service data is correct— that "signed by ITAC" means that someone employed by or otherwise associated with ITAC identified themselves to the U.S. Postal Service and accepted delivery of the envelope containing the proposed penalty assessment. JA 048–49, 089.

However, ITAC has been unable to determine that anyone employed by or otherwise associated with ITAC signed for the envelope. JA 001. Also, ITAC has not occupied that address since 2009. *Id*. The Commission acknowledged this, finding that "the recipient of delivery is unclear." JA 089. ITAC never disputed that the assessment was mailed to the address of record on file with MSHA, and as discussed *infra*, ITAC's failure to update its address with MSHA is excusable neglect. Finally, citing its precedent, the Commission determined that ITAC's "motion to reopen was timely filed once ITAC discovered" it had neglected to update its address of record with MSHA. JA 089–90.

The Commission did not unanimously vote in favor of ITAC. In dissent, Commissioner Baker observed that "the Commission has denied motions to reopen, in part, because the operator failed to maintain its correct address of record." JA 091. Although the dissent cites *Southwest Rock Products* in support of the conclusion that the motion should be denied, the operator in *Southwest Rock Products* "attempted to reopen the case nearly a year after the Order was issued, after having been sent a delinquency notification and notice that the assessment had been sent to Treasury for collection." *Sec'y of Lab. v. Southwest Rock Products, Inc.*, 45 FMSHRC 747, 749 (Aug. 30, 2023). The operator in *Southwest Rock Products* provided no explanation for "this lengthy delay nor for having missed multiple attempts to warn the operator of its error." *Id*. Additionally, the

operator provided "only a cursory explanation for its failure to timely respond to the Chief Judge's Order to Show Cause, stating that they [were] 'unsure as to why this docket defaulted and ha[d] received no documentation stating such.'" *Id*. Finally, the operator did not update its address and contacts with MSHA until December 2022, nearly seven months after MSHA sent a delinquency notice to the operator. *Id*. at 748.

ITAC's actions are distinguishable from those of the operator in *Southwest Rock Products*. Unlike *Southwest Rock Products*, ITAC did not claim ignorance in the matter: it took responsibility for not updating its address of record with MSHA and took immediate action. JA 002, 089. Additionally, ITAC gave a full accounting of its actions to the Commission, giving more than a cursory explanation of the events in question. *See* JA 001–03, 089–90.

Commissioner Baker also cited to Commission precedent regarding "a failure to contest a proposed assessment result[ing] from an inadequate or unreliable internal processing system." JA 091. The first precedent cited by Commissioner Baker, *Shelter Creek Capital*, is not comparable to ITAC's situation. *Sec'y of Lab. v. Shelter Creek Cap., LLC*, 34 FMSHRC 3053 (Dec. 11, 2012). In *Shelter Creek Capital*, counsel for the operator admitted to "administrative confusion" because "her support staff placed the contest form in the client's file instead of mailing it to MSHA." *Id.* at 3054. ITAC is

distinguishable from *Shelter Creek Capital* because it never received the proposed penalty assessment in the mail.

The second precedent cited by Commissioner Baker, *Oak Grove Res., LLC*, is also distinguishable from ITAC's situation. In *Oak Grove*, the operator failed to timely file a contest due to a miscommunication between its counsel and its safety director. *Sec'y of Lab. v. Oak Grove Res., LLC*, 33 FMSHRC 2378, 2379 (Oct. 11, 2011). The Commission "note[d] that "this type of failure appears to be part of a pattern for Oak Grove, as shown by the fact that it also occurred in three other default cases recently before the Commission." *Id*. at 2379–80. ITAC is distinguishable from *Oak Grove*, because ITAC never received the proposed penalty assessment in the mail and immediately updated its address upon discovery of its mistake. JA 089–90.

The third case cited by Commissioner Baker, *Double Bonus Coal Co.*, is also distinguishable from ITAC's situation. *See Sec'y of Lab. v. Double Bonus Coal Co.*, 32 FMSHRC 1155 (Sept. 15, 2010). In *Double Bonus Coal*, the operator received two proposed penalty assignments and signed for them. *Id*. at 1156. However, one of its employees improperly treated them as junk mail, and the operator did not timely respond to MSHA. *Id*. Again, ITAC is distinguishable because it never received the proposed penalty assessment in the mail. A one-time, promptly remedied mistake, as in ITAC's situation, is not an inadequate or

unreliable internal processing system. *See, e.g.*, JA 088–90; *see also Sec'y of Lab.*
*v. Dyno Nobel*, 2024 WL 2977604 (June 11, 2024).

Each of the precedential cases cited by Commissioner Baker involved an
inadequate or unreliable internal processing system where the operator actually
received the MSHA proposed penalty assessment and failed to adequately respond
or process the assessment. Two of the three cases involved operators with multiple
penalty assessments. In contrast, ITAC's request to reopen the final order was a
one-time request relating to one proposed penalty assessment and was based upon
an error that it promptly corrected upon discovery. Failing to change one's address
with MSHA is not an internal processing system failure, it is an error and
excusable neglect. While the Commission has acknowledged that failing to change
one's address with MSHA a second time (or more) may be evidence of an internal
processing system failure, that is not the case here. JA 088–90; *see also Dyno*
*Nobel*, 2024 WL 2977604, at *2.

ITAC did not update its address of record, but this promptly remedied
mistake did not reflect indifference, inattention, inadequate or unreliable office
procedures, or general carelessness. Instead, upon discovery of the mistake, ITAC
immediately implemented procedures to prevent, identify and correct this error
were immediately implemented. Determination of excusable neglect is an equitable
exercise, taking account of all relevant circumstances surrounding ITAC's actions.

The Commission did not abuse its discretion, equitably considered the circumstances, and properly reopened the matter. *See Pioneer Inv. Servs. Co.*, 507 U.S. at 395.

Finally, the Commission's Order is consistent with its ongoing approach to the question of excusable neglect. On June 11, 2024, the Commission published an Order in the matter of *Dyno Nobel*. *Sec'y of Lab. v. Dyno Nobel*, 2024 WL 2977604 (June 11, 2024). As in this case, the operator in *Dyno Nobel* failed to update its address with the MSHA. *Id*. at *2. The Commission "reviewed Dyno Nobel's request and the Secretary's response . . . [and found] that Dyno Nobel's failure to timely respond to the penalty assessment was the result of excusable inadvertence in this instance." *Id*. With this finding, the Commission cited to its Order in this case, stating that this case involved "reopening where an assessment was mailed to an out-of-date address of record, the operator proactively checked the former address for missing packages, contacted MSHA within a day of learning of its error, and filed to reopen within 30 days of discovering the assessment." *Id*. Similar to its Order in this case, the Commission "note[d] that a *repeated* failure to update one's address of record would likely indicate an inadequate internal process and may result in future motions to reopen being denied." *Id*. at *4. The Commission reiterated its adherence to its published factors and explained how, in

the context of this case (ITAC), its order in *Dyno Nobel* adhered to the

Commission's precedent. *Id*. at \*2.

### D. The "Commission is not bound by its precedent" when it adjudicates motions to reopen.[4]

Courts review motions to reopen for abuse of discretion, and the

Commission abuses its discretion only when it departs from its precedent ***without***

***explanation***. *Noranda Alumina, L.L.C. v. Perez*, 841 F.3d 661, 668 (5th Cir. 2016).

Contrary to what the Secretary claims, "the Commission is not bound by its

precedent." *Id.* at 667. "Nor must it distinguish every prior decision that features

somewhat similar facts." *Id*. (citing *Lone Mountain Processing, Inc. v. Sec'y of*

*Lab.*, 709 F.3d 1161, 1164 (D.C. Cir. 2013). "In particular, an agency decision may

'stand without elaborate explanation where distinctions between the case under

review and the asserted precedent are so plain that no inconsistency appears.'"

*Noranda Alumina,* 841 F.3d at 664, 667 (citing *Lone Mountain*, 709 F.3d at 1164).

However, an agency "must address precedent directly on point." *Lone Mountain*

*Processing*, 709 F.3d at 1164.

The Commission may not "apply its precedent arbitrarily," meaning that the

Commission should address the factors that motivate its decision. *Noranda*, 841

---

[4]     *Noranda Alumina*, 841 F.3d at 668. (citing *Atchison, Topeka & Santa Fe Ry.*
*Co. v. Wichita Bd. of Trade*, 412 U.S. 800, 808 (1973)).

F.3d at 668–69. *Noranda* provides an informative roadmap to determine when precedent is applied arbitrarily and how the Commission should make its decision. In *Noranda*, the operator was initially assessed a penalty by the MHSA in 2015. *Sec'y of Lab. v. Noranda Alumina, LLC*, 37 FMSHRC 2731, 2732 (Dec. 18, 2015). The operator in *Noranda* paid the proposed penalty assessment in full but alleged they intended to contest the assessment and only paid the assessment due to a mistake. *Id.* The Commission initially denied the motion to reopen, stating that "where a failure to contest a proposed assessment results from an inadequate or unreliable internal processing system, the operator has not established grounds for reopening the assessment." *Id*

The operator in *Noranda* appealed the decision to the Fifth Circuit arguing that the Commission abused its discretion by ignoring its own precedent. *Noranda*, 841 F.3d at 666. The Fifth Circuit found that the "inadequate internal processing rule" was inconsistently applied. Id. at 668. The Fifth Circuit found:

> Based on our review of the Commission's orders, an inadequate internal processing system is not *why* the Commission denies a motion to reopen. Instead, it is merely a reason the Commission cites when it chooses to deny a motion to reopen. When the Commission chooses to grant a motion to reopen, it ignores this rule.

*Id*. In *Noranda*, the Commission abused its discretion, and the Fifth Circuit directed the Commission to describe "the factors it uses in deciding motions

to reopen . . . [and] if the Commission again departs from factually similar precedent, it should justify this departure." *Id.* at 668–69..

On remand, the Commission reversed its original decision. *Sec'y of Lab. v. Noranda Alumina, LLC*, 39 FMSHRC 441 (Mar. 29, 2017). In its new order, the Commission outlined factors supporting the reopening of the case, such as the operator's good faith upon discovering the delinquency and whether the error in question resulted from unusual mistakes by the operator. *Id.* at 443–44.

Here, the Commission did not abuse its discretion by granting ITAC's motion to reopen because it sufficiently described the reasoning behind its decision. The Commission found that ITAC "acted in good faith by timely filing its request to reopen." JA 088–90. It noted that "that this is likely the contractor's first contest of a citation in fourteen years, [and] ITAC's mistake in failing to update its address was an excusable one." JA 089. The Commission also discussed the inadequate internal processing rule, warning that any failure by ITAC to update its address in the future could result in denial of any future motion to reopen. JA 090.

**E. The Commission did not ignore relevant precedent.**

As discussed *supra*, the "Commission is not bound by its precedent." *Noranda*, 841 F.3d at 667. However, the Commission "may not apply its precedents arbitrarily." *Id.* (internal citation omitted). The Commission avoids arbitrary application by describing the factors it considers in its decisions. *Id.* at

668–69. "No precise formula exists for weighing the factors, and the [Commission's] analysis is conducted on a case-by-case basis." *Noranda*, 39 FMSHRC at 443.

The precedent cited by the Secretary does not represent factually similar or binding precedent. Rather, it merely identifies factors that the Commission may consider on a case-by-case basis. The Commission is not required to strictly adhere to its precedent and instead, is required to evaluate each case on its unique circumstances.

### 1. Failure to update an address of record is not by itself grounds for denying a motion to reopen.

As quoted by the Secretary, "if MSHA sent the proposed assessment to [an operator's] official address of record, grounds may exist for denying [a] request for relief." Sec'y Br. 36 (internal citations omitted). The Secretary frames this as binding precedent which must be addressed by the Commission. Sec'y Br 36–37. However, the phrase "grounds may exist" does not establish binding precedent, it merely guides the Commission's decision-making process.

The Commission is not compelled to exhaustively address every inch of its precedent, so long as its decision-making process is consistent in cases with similar facts. *See, e.g., Noranda*, 841 F.3d at 667. In each of the three decisions cited by the Secretary on this point, the Commission could not determine if the operator

received a proposed penalty assessment and remanded each motion to reopen to an Administrative Law Judge to ultimately decide on appropriateness of relief. *See Sec'y of Lab. v. Ember Contracting*, 30 FMSHRC 1029 (Nov. 24, 2008); *Sec'y of Lab. v. Mass Transp., Inc.*, 30 FMSHRC 997 (Nov. 6, 2008); *Sec'y of Lab. v. Harvey Trucking*, 21 FMSHRC 567 (June 11, 1999). The three cases cited by the Secretary simply reiterate existing precedent: grounds may exist to deny relief.

Here, the Commission noted that ITAC's proposed penalty assessment was mailed to the address of record on file at MSHA. JA 089. The Commission acknowledged this factor and found that because ITAC had received only one citation since 2009, "ITAC may not have been aware that its former address was listed as its address of record with MSHA." *Id.* The Commission properly concluded that this was excusable neglect, justifying relief, consistent with its precedent. *Id.*; *see Sec'y of Lab. v. Hoover Excavating, Inc.*, 35 FMSHRC 317 (Feb. 12, 2013) (granting a motion to reopen even though the operator mistakenly failed to update its address of record after the operator promptly filed a motion to reopen); *see also Sec'y of Lab. v. D & S Mining & Expl.*, 36 FMSHRC 2657 (Oct. 3, 2014) (granting a motion to reopen after MSHA sent a proposed penalty assessment to the operator at two known addresses for the operator and both were returned or refused); *Sec'y of Lab. v. WESCO*, 40 FMSHRC 742, 743 (May 4,

2018) (vacating a default order even after the operator did not respond because a notice was sent to the operator's old address).

### 2. ITAC's explanations are sufficient.

The Secretary overstates the requirements for sufficient explanation of an untimely contest, explaining that ITAC was required to provide a "detailed account of why this happened." Sec'y. Br. 40. While more detail may be necessary in some complex cases, the Commission's precedent indicates that additional detail is not always required when the reason for failure to contest is straightforward. For example, in *WESCO*, the Commission granted a motion to reopen when the operator explained that it properly filed a change of address notification with MSHA, yet never received a proposed penalty assessment sent to it by MSHA. *WESCO*, 40 FMSHRC at 742; *see also Sec'y of Lab. v. Scabtron*, 33 FMSHRC 2167, 2167 (Sept. 26, 2011) (granting a motion to reopen where an operator did not receive a proposed penalty assessment because the operator's change of address was provided to MSHA but not officially reported). The Commission also requires operators to explain why their stated reason was connected to their failure to receive the proposed penalty assessment or respond in a timely manner. *See, e.g.*, *Sec'y of Lab. v. Sun West Acquisition Corporation*, 45 FMSHRC 141, 142 (Mar. 13, 2023) ("The operator's failure to allege sufficient facts is compounded by the

fact that the motion was filed nearly one year after the proposed assessment became a final order of the Commission.")

In its motion to reopen, ITAC explained that the proposed penalty assessment was delivered to a former address, which it had not occupied since 2009. JA 002. The fact that the package was mailed to ITAC's former address is a logical explanation for why it failed to receive the proposed penalty assessment or respond within thirty days. Commission precedent cited by the Secretary considers this explanation sufficient, and the Commission concluded as such in their Order. JA 089.

In *Sun West*, another case cited by the Secretary, the Commission denied a motion to reopen because the operator explained that they were "unable to contest the case in a timely manner due to [the] loss of some of their staff." *Sun West*, 45 FMSHRC at 142 (internal citations omitted). The operator in *Sun West* did not explain how their loss of staff contributed to a failure to receive the proposed penalty assessment, nor did they put forward a logical explanation. *Id.* The lack of a logical explanation was compounded by the fact that Sun West filed its motion nearly a year after the proposed penalty assessment was sent. *Id.* Unlike ITAC, Sun West did not demonstrate good faith in timely filing its motion to reopen. *Id.*

In *Secretary of Labor v. Olmos Contracting 1, LLC.*, the Commission denied the operators' motion to reopen multiple proposed penalty assessments. *Sec'y of*

*Lab. v. Olmos Contracting 1, LLC*, 39 FMSHRC 2015 (Nov. 15, 2017). The operator in *Olmos Contracting 1*, contended that it lacked awareness of the penalty assessment process and that mismanagement upon receipt of the proposed penalty assessments led to a failure to respond to MSHA. *Id.* at 2016. The Commission found this reasoning insufficient, and also found that the operator not only failed to timely file its motion to reopen, but also had inadequate internal procedures. *Id.* at 2017.

Additional precedent cited by the Secretary is distinguishable from ITAC's situation. In *Panther Creek*, the operator explained its failure resulted from an "administrative error." *Sec'y of Lab. v. Panther Creek Mining, LLC*, 46 FMSHRC 9, 10 (Jan. 4, 2024). In *Coal-Mac LLC*, the Commission denied the motion to reopen because the operator "provide[d] no explanation for its failure to timely answer the Petition or respond to the Show Cause Order beyond a general statement of 'error' . . . [as well as] indications of an inadequate internal processing system." *Sec'y of Lab. v. Coal-Mac LLC*, 46 FMSHRC 33, 35 (Jan. 5, 2024). Finally, in *Select Materials*, the Commission denied a motion where the operator claimed it had not received notice of a proposed penalty assessment even after it had received a hand delivered delinquency notice from the Secretary of Labor. *Sec'y of Lab. v. Select Materials*, 45 FMSHRC 1011, 1012–13 (Dec. 6, 2023).

In direct contrast, ITAC's explanation—that it did not receive the proposed penalty assessments because its mailing address was not up to date—provided a clear and logical reason for the delay. The Secretary argues that ITAC needed "detailed accounting" to explain why it did not update their address. Sec'y. Br. 40. However, the Commission found ITAC's explanation sufficient, and regardless, this is just one of the factors the Commission considers when reviewing motions to reopen. *See Sun West*, 45 FMSHRC at 142 (finding that a combination of factors, namely the combination of untimely filing and insufficient explanation, led to the denial of the motion).

### 3. The Commission properly assessed ITAC's internal processing systems.

The Commission may deny motions "where [the] failure [to timely contest] results from an inadequate or unreliable internal processing system." Sec'y Br. 41. However, this is just one of the factors the Commission considers when reviewing motions to reopen. Indeed, the Commission considered this factor when deciding whether to reopen ITAC's assessment, concluding that ITAC's single failure to update its address to be the "result of excusable inadvertence" and was not the result of an inadequate or unreliable internal processing system. JA 090; *see also Dyno Nobel*, 2024 WL 2977604, *at 2 (June 11, 2024) (citing Ord.).

The Secretary contends that ITAC's failure to update its address is a repeated failure. Sec'y. Br. 30–33, 42. However, the Secretary never made this

argument in its Opposition to Motion to Reopen, and no references to MSHA Form

7000-2 exist anywhere in the record of this matter. Additionally, while an

electronic version of MSHA Form 7000-2 may be submitted using a publicly

accessible online MSHA system, any address change information collected with

the form does not appear to be accessible to the public or the Commission using

the MDRS. A search of the MDRS with ITAC's Contractor ID, D737, allows the

public to see "Quarterly Employment Production" data. *Mine Data Retrieval*

*System*, MINE SAFETY AND HEALTH ADMIN., https://www.msha.gov/data-and-

reports/mine-data-retrieval-system (follow "Contractors" hyperlink; then search for

ITAC's Contractor ID, "D737;" then choose "Quarterly Employment Production.")

(last visited July 9, 2024). While ITAC's current address information is visible

using the MDRS, no address change history is visible or accessible to the public.

The Court should therefore disregard the Secretary's line of argument

regarding MSHA Form 7000-2. *See Fla. Power & Light Co. v. Lorion*, 470 U.S.

729, 744 (1985) ("The reviewing court is not generally empowered to conduct a de

novo inquiry into the matter being reviewed and to reach its own conclusions based

on such an inquiry.")

The Secretary also argues that because ITAC went to its old address to

search for missing packages, it indicates that ITAC knew its address was not up to

date. Sec'y Br. 41–42. This claim is baseless, as there is nothing in the record

stating that ITAC routinely checked their old address for packages. The motion only explains that ITAC went to their old address once to look for missing packages. JA 001. There is no evidence in the record that ITAC's mistake—now corrected—was a repeated occurrence.

4. **The Secretary overstates the importance of factors such as the substantive nature of the underlying violation and notice to an operator that it would receive a penalty.**

The Secretary overstates the importance of notice given to an operator that it would receive a penalty and the substantive nature of the underlying violation: the precedent cited by the Secretary merely demonstrates how these considerations may play into the factors weighed by the Commission. Sec'y Br. 42–43.

Good faith may be demonstrated by an operator's actions after notice that it would receive a penalty. In *Panther Creek*, the Commission noted that the operator received forty-nine citations over eighteen days and should have been aware that a proposed penalty assessment was forthcoming. *Panther Creek*, 46 FMSHRC at 11. As a result, the operator's failure to anticipate an assessment indicated a lack of good faith in moving to reopen. *Id*. In contrast, ITAC was issued a single citation. JA 021. Additionally, the Commission measured ITAC's good faith by considering the timely filing of the motion to reopen and their proactiveness in searching for missing mail. JA 090; *see also Dyno Nobel*, 2024 WL 2977604, *at 3.

The seriousness of the underlying issue informs the Commission's analysis of good faith. *Sec'y of Lab. v. Potter South East*, 45 FMSHRC 152, n.3 (Mar. 22, 2023). As mentioned *supra*, the Commission explicitly evaluated ITAC's good faith. JA 090. There is no precedent requiring the Commission to reference all of its published factors when deciding whether to reopen a case. *See Noranda*, 39 FMSHRC at 442. ("[T]he Commission must explain and apply the factors it considers when denying a motion to reopen on the ground of inadequate internal procedures.") ITAC has not had the opportunity to defend itself in this case, and the seriousness of the underlying citations remains unchallenged, except for ITAC's assertion in its motion to reopen that the "Proposed Assessment contains findings which are inconsistent with the record of this matter, including, among other things, the Structural Investigation of J. Jarrod During, P.E. of MSHA, dated January 4, 2023." JA 002. It would be unreasonable for the Commission to base its decision to reopen on the back of unproven and inconsistent allegations made by the Secretary.

## III.    If the Commission abused its discretion, remand is appropriate.

As "an independent adjudicative agency that provides administrative trial and appellate review," the Commission's final orders are subject to judicial review. 30 U.S.C. § 816; *About FMSHRC*, Fed. Mine Safety and Health Rev. Comm'n, https://fmshrc.gov/about (last visited July 1, 2024). As of the filing date of this

brief, the Commission has not promulgated any procedural regulations or rules concerning Motions to Reopen. Requests to Reopen, FED. MINE SAFETY AND HEALTH REV. COMM'N, https://www.fmshrc.gov/content/requests-reopen (last visited July 1, 2024). The Commission has, however, published procedures on its public website generally describing the process it requires for Motions to Reopen. *Id*.

On October 6, 2020, the Commission proposed a number of "new rules and revisions to its current rules that reflect the Commission's actual practices . . . [including] new Commission Procedural Rule 32[,] which pertains to motions to reopen orders that have become final as the result of a failure to make a timely filing." Procedural Rules, 85 Fed. Reg. 63,047, 63,408 (Oct. 6, 2020) (to be codified at 29 C.F.R. pt. 2700). Proposed Commission Procedural Rule 32 sets "forth a procedure for motions to reopen drawn from the Commission's experience in receiving and disposing of such motions." *Id*. at 63,051. However, this proposed rule has not yet been promulgated, and until such time, the guidance on the Commission's website, coupled with its precedent, should guide the general public, interested parties, the Commission, and this Court.

If the Court determines that the Commission has not explained itself or applied its case law precedent arbitrarily, a remand is appropriate. "[R]emands provide a ready method for appellate courts to supervise the decision-making

process of lower courts . . . [and] [r]ather than digging into the merits and affirming or reversing, or just denying review, a reviewing court might vacate and remand in order to reinforce the procedural rules and deter future deviations." Aaron-Andrew P. Bruhl, *The Remand Power and the Supreme Court's Role*, 96 Notre Dame L. Rev. 171, 179 (2020). The Secretary partially quotes *Donovan v. Stafford Const. Co.* in support of its argument that remand is inappropriate. However, the full quotation is illuminating: "Since all the evidence bearing upon the issue is contained in the record before us, however, we believe that a remand on this issue would serve no purpose. This is particularly so in light of our ultimate holding that only one conclusion would be supportable." *Donovan v. Stafford Const. Co.*, 732 F.2d 954, 961 (D.C. Cir. 1984).

If the Court believes that the Commission has not fully explained itself or arbitrarily applied its precedent, then logic indicates that all the evidence bearing upon the issue is not contained in the record, and remand is appropriate. *See, e.g., Noranda*, 841 F.3d at 669 (remanding denial of motion to reopen). Finally, "[i]f the record before the agency does not support the agency action, if the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional

investigation or explanation." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985).

The circumstances before this Court are not rare, and remand to the Commission for further findings would be appropriate should this Court find merit in the Secretary's arguments and determine that the Commission abused its discretion in the Order.

### Conclusion

For the reasons stated herein, the Secretary's Petition should be dismissed because (i) the Commission's Order does not come within the narrow confines of the collateral order doctrine and the Court lacks jurisdiction to hear the Secretary's Petition, or, in the alternative, (ii) the Commission did not abuse its discretion in allowing ITAC to be heard on the merits and the Commission's Order should be affirmed.

Dated: JULY 17, 2024
      CHARLOTTE, N.C.

Respectfully submitted,

**s/ ALLEN L. WEST**

ALLEN L. WEST
ADRIANNE CHILLEMI[5]
ROGER M. STEVENS
525 N. TRYON ST, SUITE 1400
CHARLOTTE, N.C. 28210
*Counsel for Respondent Industrial TurnAround Corporation*

---

[5]    Ms. Chillemi submitted her Application for Admission to Practice to this Court on July 16, 2024. Her application is pending as of July 17, 2024.

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because the brief contains 9,842 words, excluding the parts of the brief exempt by Federal Rule of Appellate Procedure 32(f) and Circuit Rule 32(e)(1).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in Microsoft Word with 14-point Times New Roman font.

Dated:  JULY 17, 2024         **s/ ALLEN L. WEST**
       CHARLOTTE, N.C.

                         ALLEN L. WEST
                         ADRIANNE CHILLEMI[6]
                         ROGER M. STEVENS
                         *Counsel for Respondent Industrial*
                         *TurnAround Corporation*

---

[6]    Ms. Chillemi submitted her Application for Admission to Practice to this Court on July 16, 2024. Her application is pending as of July 17, 2024.

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the

Court for the United States Court of Appeals for the District of Columbia Circuit

by using the appellate CM/ECF system on July 17, 2024. Participants in the case

who are registered CM/ECF users will be served by the appellate CM/ECF system.

EDWARD V. HARTMAN
U.S. DEPARTMENT OF LABOR
OFFICE OF THE SOLICITOR
DIVISION OF MINE SAFETY AND
HEALTH
201 12th STREET SOUTH, STE. 401
ARLINGTON, VA 22202
hartman.edward.v@dol.gov
*Attorney for the Secretary of Labor*

T. JASON RILEY
OFFICE OF GENERAL COUNSEL
FEDERAL MINE SAFETY AND
HEALTH REVIEW COMMISSION
1331 PENNSYLVANIA AVE., NW
SUITE 520N
WASHINGTON, D.C. 20004
jriley@fmshrc.gov
*Counsel for Federal Mine Safety and
Health Review Commission*

Dated:  JULY 17, 2024
       CHARLOTTE, N.C.

**s/ ALLEN L. WEST**

ALLEN L. WEST
ADRIANNE CHILLEMI[7]
ROGER M. STEVENS
*Counsel for Respondent Industrial
TurnAround Corporation*

---

[7]    Ms. Chillemi submitted her Application for Admission to Practice to this Court on July 16, 2024. Her application is pending as of July 17, 2024.